E. S. CRAVEN v. P. P. FREEMAN, Adm'r of William Kirkman.

*Co-Sureties—Contribution.*

1. A surety upon a bond who voluntarily pays a balance due upon the same after he has obtained his discharge in bankruptcy is entitled to contribution from a co-surety.

2. Where a surety upon a bond pays a balance due upon the same with knowledge of the existence of a covenant upon the part of the obligee to a co-surety not to sue him, he is not entitled to contribution from such co-surety.

(*Sherrod* v. *Woodward,* 4 Dev., 360; *Reeves* v. *Bell,* 2 Jones, 254; *Jones* v. *Blanton,* 6 Ired. Eq., 115; *Evans* v. *Raper,* 74 N. C., 639; *Russell* v. *Adderton,* 64 N. C., 417, cited and approved.)

CIVIL ACTION tried at Fall Term, 1879, of RANDOLPH Superior Court, before *McKoy, J.*

The action was brought to recover a sum, by way of contribution, of the defendant's intestate, William Kirkman. A demurrer to complaint was overruled by the court, and the defendant appealed.

*Messrs. Scott & Caldwell,* for plaintiff.
*Mr. J. T. Morehead,* for defendant.

SMITH, C. J. The complaint avers that one Thomas S. Kirkman, as principal, the defendant's intestate and the plaintiff as sureties, on December 22, 1866, executed their bond to Moses Routh and therein promised to pay him, one day after date, eight hundred dollars with interest from the 3rd of March preceding, which bond was transferred to Hugh Parks; that the principal died in 1867, intestate and insolvent, and his administratrix made several small payments, the amount and date of which are specially set out; that the plaintiff in December, 1872, filed his petition in bankruptcy, and afterwards obtained his discharge; that his assignee in bankruptcy sold the excess of the land above the homestead, and it was bought for the plaintiff at the price of two hundred dollars; and all the personal estate was assigned as his exemption ; that the creditor duly proved his debt against the bankrupt's estate, and no other proof of debt was filed; that the plaintiff assigned his bid to Parks, and sold him part of the homestead for the aggregate sum of six hundred and fifty dollars, the amount due on the debt in full satisfaction ; that on May 31, 1873, before the discharge of the residue of the debt, the defendant's intestate paid to Parks one hundred and forty dollars, and took from him an acknowledgment in these words :

Received May 31, 1873, of William Kirkman, one hundred and forty dollars, in full of his part of a certain note or bond, of which I am the assignee, given by Thomas Kirkman, the said William Kirkman and E. S. Craven, and

payable to Moses Routh, due one day after date for eight
hundred dollars, in consideration whereof I do hereby con-
tract and agree that I will not again sue, or cause to be sued
the said William Kirkman, his executors or administrators,
for or on account of the said bond or any part thereof, now
due or to become due, nor further demand at law or in
equity any further payment on account of the same.
Witness my hand and seal the day and year above written,
it being expressly understood between the parties hereto
that this instrument shall and does in no event affect as a
release of the other obligors on said bond, but as a con-
tract to him, the said William Kirkman.

 (Signed)       HUGH PARKS, [seal.]

 The defendant demurs to the complaint and assigns as
causes of demurrer apparent thereon :

 1. That the plaintiff was discharged from the debt and
paid it voluntarily when under no legal obligation.

 2. That the defendant by virtue of the covenant was re-
leased from all further liability on the bond.

 The defences will be considered in their proper order :

 First—This is not an effort to revive an obligation which
the creditor, by lapse of time or a discharge in bankruptcy,
has lost the right to enforce, and against which the surety
is equally protected, by his voluntary payment and bring-
ing his action for indemnity against the principal, or for
contribution against the co-surety, because the statute in
such case runs only from the payment. *Sherrod* v. *Wood-
ward,* 4 Dev., 360. In such case PEARSON, J., expresses a
doubt and says : " If the action of the original creditor was
barred, we are inclined to the opinion that a surety, who
afterwards pays the debt, can stand in no better situation."
*Reeves* v. *Bell,* 2 Jones, 254. But he does not refer to the
previous case in which a contrary doctrine was held, and
in which NASH, J., says : " If the ward of Hicks, as is al-
leged, had reached twenty-one more than three years before

they commenced their suit against the present plaintiff, he might, if he had so chosen, have protected himself under the act limiting the time within which actions must be brought against the sureties to guardian bonds. But he did not so choose. A recovery has been had against him upon a just claim, and he now seeks to make the defendant bear an equal share of that just demand. * * * There was no obligation on the plaintiff either in law or equity to plead that statute, or rely upon the protection it gave him." *Jones* v. *Blanton*, 6 Ired. Eq., 115.

But whatever may be the correct principle, the present case does not fall within it. The intestate was not released, but remained liable as before to the creditor for the whole debt. The bankrupt act provides that "no discharge granted under this act shall release, discharge or affect any person liable for the same debt for or with the bankrupt, either as partner, joint contractor, endorsee, surety or otherwise." Rev. St. U. S., § 5118. When therefore the plaintiff paid the debt under a sense of moral but not legal obligation, it was in effect an extinction of one-half of the intestate's liability, and a transfer of the other to a substituted creditor, which the surety becomes by his payment. Instead of being charged with an extingushed liability, he is relieved of one-half a debt for which he was bound, and in paying which he would have had no redress on the plaintiff, if the latter had availed himself of the discharge. The intestate was therefore benefited by the plaintiff's payment and can have no just ground for complaint.

Secondly—The effect of the covenant entered into with the creditor, Routh.

A covenant not to sue was no defence to an action at law, under our former system brought in violation of it, and the interposition of a court of equity had to be invoked to compel a specific performance of the contract, and this gave to it the practical effect of a release between the parties.

Adams Eq., 78; *Evans* v. *Raper*, 74 N. C., 639.   The effect of a covenant not to sue one of the parties to a note is thus explained by PEARSON, C. J., in *Russell* v. *Adderton*, 64 N. C., 417: " The intention of the parties is carried out by allowing the creditor to take payment at law, leaving the party who holds the covenant to his remedy in equity for a specific performance, by which he is fully protected, not only from paying more directly, but if *there be sureties*, by restraining the creditor from collecting any amount out of them, because that would subject him to their action, and thus indirectly violate the covenant, or if there be other principal obligors, by restraining the collection of any more than an *aliquot* part of the debt, or any amount that would subject the party to an action for contribution."   Under our present system the relief may be obtained by the debtor in the same suit, and in a case like this, the surety will be protected against any demand for a sum in excess of that paid by the surety to whom the covenant was given.

As the plaintiff has possession of the covenant, and does not allege that he paid the money before he was aware of its existence, and if he had such knowledge it was in his own wrong, the demurrer for this reason must be sustained. The judgment of the court below in overruling it must be reversed, and the defendant go without day, and it is so ordered.

Error.                                   Reversed.