WILLIAM A. RUSSELL *v.* JEREMIAH ADDERTON and others.

In case of doubt, an instrument will be construed as a *covenant not to sue,* rather than as a *release.*

The operation of a covenant not to sue, was formerly, that, after the creditor had taken judgment for his debt, the covenantee resorted to equity for a specific performance of such covenant, in the course of which he was fully protected not only from paying any thing more, *directly,* but, if there were *sureties,* by restraining the creditor from collecting *any amount* out of them, as that would subject the covenantee to their action, and thus violate the covenant *indirectly ;* so, if there were other *principal* obligors, by restraining the collection of more than an *aliquot part* of the debt, or of any amount that would subject the covenantee to an action for contribution.

Under the C. C. P. the same relief may be had by *counter-claim,* so as to put the judgment in the form of a separate one against the several other principals, for such an amount of the debt and interest as would not give them a right of action against the covenantee.

DEBT, tried before *Buxton, J.,* at Spring Term 1870, of MONTGOMERY Court.

Three cases depending upon the same principle of law were heard at the same time, between parties substantially the same, one L. F. Russell being plaintiff in the third suit. The defendants in each, were Jeremiah Adderton, Thomas Stokes and John P. Mabry, who, with J. M. Crump, as principals, and two others as sureties, had executed three notes for $1,400 each, payable to the plaintiffs. The pleas were, Payment and set off, and, by Thomas Stokes, Release of T. J. Patrick, administrator of J. M. Crump, who had died pending the suit. At Fall term 1869, Stokes, upon paying the costs to that time, was allowed to pay into Court for the plaintiff, in each case, one-third of $1,000 with interest from February 25, 1868, and thereupon, to add the pleas, Tender, Accord and Satisfaction, Release, Payment into Court.

Upon the trial, Thomas Stokes testified that in January 1868, Patrick, as administrator of Crump, and he, agreed with the plaintiff, to compromise the three suits for themselves jointly, by paying at February Court, $2,000, and thereupon being released; that Patrick at that time paid his part, and Stokes was allowed until the next week to pay his, but that, owing to high water, he was not able to attend at the place agreed upon.

The following is a copy of the receipt taken by Patrick from the plaintiff:

"Received February 25, 1868, of Dr. Thomas J. Patrick, Administrator of James M. Crump, deceased, six hundred and sixty-six dollars and sixty-six and two-third cents in full of all claims which I may have against him as administrator aforesaid, arising from the liability of his intestate as one of the principals on two notes, the one due to me individually, and the other to me as administrator of Gilbert Russell, both of said notes bearing date August 29th, 1861, the said notes being each for the sum of fourteen hundred dollars, with Jerre Adderton, Thomas Stokes, James M.

Crump and J. P. Mabry, as principals; and I further agree to enter a non-suit as to the said James M. Crump, and not to receive the same upon the suits now pending; the above consideration being in full of all claims against the estate of the said J. M. Crump, and not to receive the same upon the suits now pending; the above consideration being in full of all claims against the estate of the said J. M. Crump arising by reason of his being one of the principals of said notes, it being understood that this agreement is in no way to affect the liability of the other principals. In witness," &c., &c.

(Signed.) W. A. RUSSELL, [Seal.] .

The remainder of the $1,000 was paid by Patrick to L. F. Russell, upon receiving from him a like receipt.

Upon the trial, the defendant submitted that the operation of the receipt above, was to *release* Crump's estate, and, therefore, the other defendants; and, as another view, that at all events Stokes was released by the joint compromise on behalf of himself and Patrick, which created a new contract by way of substitution, and had been fulfilled by Patrick's payment at the time, and his own subsequent payment into Court.

His Honor directed the jury, in each case, that the plaintiff was entitled to a verdict according to the face of the note, subject to a credit for $333.33⅓ paid by Patrick, February 25th, 1868. He also intimated that as the plaintiff had declined to receive the money paid into Court, except as a credit *pro tanto*, Stokes might withdraw it; and thereupon he did.

Verdict and judgment accordingly, and the defendant appealed.

*N. McKay and Battle & Sons*, for the appellant.
*Blackmer & McCorkle, contra*, cited Parsons' Cont. (1866)

1, 28, 29 ; 2 *Ib.* 715; *Winston* v. *Dalby ante* 299 ; *Bailey* v. *Berry*, 8 Am. Law. Reg., 270; *Durell* v. *Wendell*, 8 New Hamp. 369 ; *Bank* v. *Messenger*, 9 Cow. 37 ; *Couch* v. Mills, 21 Wend. 424 ; *McAllister* v. *Sprague*, 34 Maine 296.

PEARSON, C. J. The case turns upon the construction of the deed executed by the plaintiff to Patrick, administrator of Crump. If the instrument be treated as a "release," it operates by way of extinguishment, and enures to the benefit of the other obligors, as well as of Crump. If it be treated as a "covenant not to sue,"' the other obligors remain liable for the balance of the debt.

The first construction in most cases disappoints the intention of the parties, and carries the legal effect of the instrument beyond their meaning; for which reason the Courts incline to adopt the construction which gives to the instrument the effect merely of a covenant not to sue, and the intention of the parties is carried out by allowing the creditor to take judgment at law, leaving the party who holds the covenant to his remedy in equity for a specific performance, by which he is fully protected not only from paying any more directly, but, if there be sureties, by restraining the creditor from collecting any amount out of them, because that would subject him to their action, and thus indirectly violate the covenant, or, if there be other principal obligors by restraining the collection of any more than an aliquot part of the debt, or any amount that would subject the party to an action for contribution.

In our case the intention that the deed is not to operate as a release and extinguish the whole debt, is not left to conjecture, but is apparent on the face of the instrument. The consideration set out, is the payment of a part of the debt, and there is a proviso "that this agreement is in no way to affect the liability of the other principals." So,

beyond question it is merely a "covenant not to sue." The sureties are not named, and are treated as if discharged, and although by the words of the proviso the liability of the other principals is in no way to be affected, this must be taken in connection with the other parts of the instrument, by which it is stipulated that the sum paid was to be in full of all claims against Patrick, administrator. The defendant was to enter a non-suit as to him, and "was not to receive the same (the amount paid by Patrick) upon the suits now pending." From this it is clear that the liability of the other principals was to be affected by giving them the benefit of the sum paid, and although their liability was not to be otherwise affected, taking them *jointly*, still it was to be affected, taking them severally, to the extent of not subjecting any one to the payment of more than an aliquot part, for if he was forced to pay more, that would subject Patrick to an action for one-half of the excess, and thus violate the stipulation that the receipt of part should be in *full* of all claims so far as he was concerned, directly or indirectly. The deed being in the words of the creditor, is to be taken most strongly against him, so as to give it full effect in favor of the other party. It follows, there was no error in entering judgment for the whole balance, according to the verdict, leaving Patrick, in connection with any of the other principals, to see to it that no more than an aliquot part was collected from any one, so as to give an action against Patrick for contribution, by a bill for a specific performance should it become necessary.

Under the Code of Civil Procedure the matter could be set up as a counter claim, so as to put the judgment in the form of a separate one against the several other principals, for an amount of the debt and interest which would not give them a right of action against Patrick. In this particular

the Code is an improvement upon the old mode of filing a bill.

As the plaintiff does not appeal, we take no notice of the order allowing Stokes to withdraw the money paid into Court.  If objected to, its correctness might have been questioned; he is liable for the amount which he originally agreed to pay.  This may save the parties from the expense of a resort to the Courts, in order to have the "covenant not to sue" specifically performed.

PER CURIAM.                        Judgment affirmed.