FLUKER G. STEWART

*v.*

GEORGE B. CRAIG, JR., AND LESTER L. MORRIS, D/B/A
CRAIG-MORRIS GLASS COMPANY.

NELLE M. STEWART

*v.*

GEORGE B. CRAIG, JR., AND LESTER L. MORRIS, D/B/A
CRAIG-MORRIS GLASS COMPANY.

(*Nashville,* December Term, 1960.)

Opinion filed March 10, 1961.

BAILEY, EWING, DAVIES & BAILEY, Nashville, for plaintiffs in error.

FRANK C. GORRELL, BASS, BERRY & SIMS, JOHN WHALLEY, Nashville, for defendants in error.

MR. JUSTICE BURNETT delivered the opinion of the Court.

The Stewarts (plaintiffs in error) filed their separate actions against the defendants, now defendants in error, for damages resulting to them from an automobile accident. The declarations in each case allege that the defendants were the employers of an individual whose negligence was the direct and proximate cause of the accident, and who was then acting within the scope of his employment.

To these declarations the defendants interposed a plea of the general issue and subsequently filed three special pleas, asserting (a) that the plaintiffs had accepted some money from the defendants' employee, who was the operator of the automobile that caused the accident and that by thus accepting this sum of money any liability of

the defendants had been discharged; (b) that the Stewarts (plaintiffs, plaintiffs in error here) had given the defendants' employee a release which served to discharge the defendants; and (c) a nominal plea of accord and satisfaction. To these special pleas the plaintiffs joined issue asserting that the instrument given by the plaintiffs to this employee of the defendants was a covenant not to sue and in no way served to release the defendants.

Thus it is we have as the sole issue in this case the question of whether or not a covenant not to sue given to an employee operates as a release or discharge of his employers. The trial court so held and to this holding exceptions were duly made, and an appeal perfected. Able briefs have been filed and arguments have been heard, and after considerable study and thought we now have the matter for disposition.

In the beginning we think it is well to point out that the covenant not to sue here given was not given to one or more joint tort-feasors but was given to the employee of the defendants, who in and for themselves were guilty of no wrongs, but that any liability on them must be predicated entirely upon the negligent acts of the covenantee, that is, the one to whom the covenant was given not to sue. Our courts have uniformly held that a covenant not to sue one tort-feasor does not affect the right to sue other tort-feasors. We have no case though, as far as diligent counsel or the Court can find, in which a situation arises as that herein. The question of the liability of other joint tort-feasors when a covenant not to sue is given to one is thoroughly and ably discussed in *Nashville Interurban Ry. v. Gregory,* 137 Tenn. 422, 193 S.W. 1053. Of course, the reason given for accepting a covenant not to sue in tort actions of the kind is for the

purpose of avoiding the technical rule of the common law, that the discharge of a wrongdoer extinguishes the cause of action arising out of the wrong, and therefore operates equally to discharge those jointly guilty thereof.

In the Nashville interurban case, supra, this Court recognized that in a subsequent suit by the covenantor against the covenantee, on the same cause of action, the latter may plead the breach of the covenant by way of set-off or recoupment, the covenant being thus given the effect of a satisfaction of damages which the injured person might otherwise be entitled to, although not, in legal parlance, a technical satisfaction of the cause of action. Likewise in this Nashville Interurban case, supra, this Court held that the amount of money received by the covenantor may not operate to reduce the damages recoverable from a joint tort-feasor. This rule was made necessary by the then accepted rule in this State that there could be no contribution between joint tort-feasors, and not because the sum so received can in no event be treated as the payment for the damages for the injuries inflicted. In 1950, or nearly forty years after the Nashville Interurban case, this Court stated and concluded in the opinion of *Davis v. Broad St. Garage,* 191 Tenn. 320, 232 S.W.2d 355, that it was still the rule in this State that there could not be contribution between jont tort-feasors where they by concert of action have been guilty of a wilful tort, an immoral act, or where consciously violating the law, but held that where the joint tort-feasor was guilty of mere passive or negative negligence that he may recover a contribution, where other joint tort-feasors have contributed more proximate, positive or active negligence to the injury. This holding was subsequently approved by this Court in *American Casualty Co. v. Bill-*

*ingsley,* 195 Tenn. 448, 260 S.W.2d 173, and has been followed in other unreported cases.

It is conceded, as it should be, that any liability of the defendants herein, is based on the doctrine of *respondeat superior* which rests upon the doctrine that the wrong of the servant is the act of his employer. *Goodman v. Wilson,* 129 Tenn. 464, 166 S.W. 752, 51 L.R.A.,N.S., 1116.

This Court many years ago in *Loveman Co. v. Bayless,* 128 Tenn. 307, 160 S.W. 841, held that where the servant, the immediate actor, could not be charged with liability for the tort, the principal, the remote actor, had no part in the tortious transaction and could not be held responsible. Thus it is that if the remote actor, the defendants in this case, had no other direct relation to the wrongs or injuries complained of, but was liable only because of the doctrine of *respondeat superior* they clearly do not occupy the position of a wrongdoer.

The rule of law in this State, and universally so as far as we know, that where the master (defendants in this case) is held liable for negligent acts of his servant (covenantee) solely upon the doctrine of *respondeat superior,* the master in turn has a cause of action against the servant for any such amount for which he is held liable. *Maxwell v. Louisville & N. R. Co.,* 1 Tenn.Ch. 8; *Carter v. E. T. & W. N. Transp. Co.,* 35 Tenn.App. 196, 243 S.W.2d 505; *Williford v. Kansas City M. & B. R. Co.,* C.C., 154 F. 514; 42 C.J.S. Indemnity sec. 21, p. 597.

Thus it is under this last announced principle if the present suits are maintained to their conclusion, and there is a judgment rendered against the defendants in error, they in turn can turn around and sue their employee, covenantee herein, and would be entitled to a

judgment against him for the amount of the judgment rendered against them, because any judgment rendered against them was due entirely to the employee's negligence.

We have held over the years in this State that if an injured person is barred by law from suing the servant he is likewise barred from maintaining a suit against the master when liability is predicated solely on the doctrine of *respondeat superior*. One or two of these cases illustrate what we have just said. In the case of *Raines v. Mercer*, 165 Tenn. 415, 55 S.W.2d 263, this Court held that a suit was barred against a father where the accident was due solely to the negligent operation of the father's car by the son after the son had married the party-plaintiff to the law suit. Of course, this was under the well established rule that a wife could not maintain a suit in tort against her husband. The Court held that you could not do indirectly what you could not do directly, that is, the wife, not being able to sue her husband, could not sue the father, who was liable purely through the negligence of the son and husband.

Another case, which is well reasoned and analogous in principle, is that of *Graham v. Miller*, 182 Tenn. 434, 187 S.W.2d 622, 162 A.L.R. 571. Miller was an employee of Grahams as a truck driver, and in the operation of this truck of the Grahams, Miller ran over his son and killed him. The suit was brought against the owners of the truck by the dead boy's mother, suing as administratrix. The declaration alleged negligence on the part of the truck owners in two aspects. The only one here in point was through the negligence of the driver of the truck, who was the father of the dead boy. This Court held, as in the Raines case, that since the action against the Grahams

was really in fact an action against the father, that it would not permit to be done indirectly what could not be done directly, and looked back of the situation as to what would be the ultimate result if an action was allowed to be maintained against the Grahams, and thus dismissed the suit. *Ownby v. Kleyhammer,* 194 Tenn. 109, 250 S.W.2d 37, presents a like result.

Thus we see that under our authorities where the injured party is barred from suing the servant, he cannot sue the master, where the suit is predicated solely upon negligence of the servant under the doctrine of *respondeat superior.* We have no case in this State of the proposition now before us, that is, whether or not a suit may be maintained against a master which is predicated solely on the negligence of the servant where the servant has been given a covenant not to sue. The authorities so far as we can find elsewhere though answer this question to the effect that such a suit may not be maintained, because, if it were, the number of other suits which could be brought would when they finally completed the circuit come out in the same position as when they started, that is, that since the servant has been given a covenant not to sue a suit then may not be maintained against the master. It seems to us that the reasoning under our authorities, above enumerated, that when a suit is barred against a servant it is likewise barred against a master, is in effect the same reasoning that must be given under a factual situation as in the instant case.

Though the courts of this State have not passed on this question, Judge Marion Boyd of the District Court at Memphis did so hold, that is, that where a covenant not to sue has been given a servant the suit could not be maintained against the master. This suit was appealed

to the 6th Circuit where it was heard before Judges Simons, Martin and Stewart, and that court affirmed, holding that "inasmuch as the liability alleged against the appellee company rested solely upon the averment that the truck driver was the servant or agent of the appellee company for whose negligence it would be responsible upon the principle of *respondeat superior,* a covenant not to sue the truck owner and the driver— appellee's alleged agent—would necessarily release appellee. The case is clearly distinguishable from those cases in which a covenant not to sue one joint tort-feasor does not protect another joint tort-feasor from an action for damages brought against it by an injured party." *Terry v. Memphis Stone and Gravel Co.,* 222 F.2d 652, 653. The 6th Circuit opinion then cited a number of the cases hereinbefore cited, showing the reasoning of the Tennessee Supreme Court as we have attempted to point out, and held that their conclusion is supported in principle by many of those cases hereinbefore cited from this Court. That court likewise cites the case of *Karcher v. Burbank,* 303 Mass. 303, 21 N.E.2d 542, 124 A.L.R. 1292, which is indeed a well reasoned opinion. Of course, we are not bound by this Federal case, but it is very persuasive, especially in view of the very high standing of the Judge who tried this case and of those who prepared the opinion as reported.

The case of *Karcher v. Burbank,* supra, was an equity action brought by the employee or agent or covenantee against the covenantor to enjoin a proposed suit at law against the master of the covenantee. The court sustained this injunctive process because by doing so it arrived at what would be eventually arrived at after a number of suits had been brought and concluded. In other words,

the suit prevented a circuity of action and arrived at the point directly that could have eventually been arrived at. That court pointed out what we have attempted to show heretofore in this opinion, that is, if the present suit is maintained against the employer by the covenantor the employer when judgment is rendered against him may then sue the employee or covenantee, who in turn will sue the covenantor again, and of course since the judgment against the employer is based upon the negligence of the employee clearly the employer would be entitled to the same judgment over against the employee that was gotten against him, and since the covenant not to sue was given by the covenantor to the covenantee he likewise would be entitled to such a judgment back against him as was originally gotten in the action against the employer.

The case, that is the Karcher case, cites a number of authorities from other jurisdictions including *Smith v. South & W. R. Co.,* 151 N.C. 479, 66 S.E. 435, 437, where it is said, among other things, "Under our present system, where law and equity, legal and equitable rights, are administered in the same action, his honor, in the trial of this action accomplished what * * * (was) declared (in the case of *Russell v. Adderton,* 64 N.C. 417) could be done by a suit in equity."

Thus we come to the proposition of whether or not herein this Court should do and can do what a court of equity would do under the factual situation as herein, where the covenant not to sue is plead and conceded by replication to be a covenant not to sue.

Section 16-511, T.C.A., provides in substance that where a suit of an equitable nature is brought in the Circuit Court and it isn't objected to it may be transfer-

red to the Chancery Court or heard and determined by the Circuit Court as a court of equity. Under this statute in the case of *Metropolitan Life Ins. Co. v. Humphrey,* 167 Tenn. 421, 70 S.W.2d 361, this Court held that while the Circuit Court was without jurisdiction to relieve against mutual mistakes yet where a defendant pleads in an action at law a release as an accord and satisfaction and the plaintiff files replication thereto averring that the release was executed under mutual mistake of fact, and an issue is taken on the replication, without demurrer as to jurisdiction, the Circuit Court may grant relief on equitable principles. This authority seems very analogous to us to the situation herein. We think that under this authority the trial judge had the right and correctly construed the instrument here in view of its ultimate result and dismissed the action.

For the reasons hereinbefore stated the judgment below will be affirmed.

### On Petition to Rehear

There has been filed herein a courteous, forceful and dignified petition to rehear.

This petition brings to our attention some authorities that were not considered in the original opinion, and argues very forcefully that we have taken in this opinion, and established it as the law of this State, the contrary to what the Court of Appeals held in *Mink v. Majors,* 39 Tenn.App. 50, 279 S.W.2d 714, and that the case of *Karcher v. Burbank,* as cited in our opinion as supporting our position is not the law to be applied in this State, because this Court in *Byrd v. Crowder,* 166 Tenn. 215, 60 S.W.2d 171, has rejected the Massachusetts rule with reference to covenants not to sue.

In support of the argument in the Mink case, supra, that it governs the proposition here, counsel cites an article by Dean Wade of Vanderbilt University, as appearing in 9 Vanderbilt Law Review, 1137, 1154. Dean Wade, citing the Mink case, says, among other things, it "is apparently unique to the state of Tennessee. Courts elsewhere all disagree with it." Then he cites the case of *Terry v. Memphis Stone and Gravel Co.*, which we rely upon in our opinion as really the sound principle to be applied under circumstances as are in this case. He says, too, that the Terry case seems to be inconsistent with the Mink case. After further consideration of the matter, and upon a careful reading of the Mink case, we are forced to the conclusion that insofar as the Mink case disagrees with what we have said herein we disapprove its holding. The question herein determined was not stressed in the Mink case. Judge Wade says in his article that in view of the Mink case that it seems to be necessary to have legislation on the matter. The holding in our original opinion will obviate any such legislation, as we deem it for reasons therein stated the sound, reasonable and logical conclusion under such a state of facts.

In *Byrd v. Crowder,* supra, this Court reached a conclusion that certain language in a purported covenant not to sue was in fact a release, and thus sustained the lower court in dismissing it as such, and said:

"'* * * The reason for excluding a mere covenant not to sue from this rule was stated to be that the covenant does not 'have the effect, technically, of extinguishing any part of the cause of action.' ''

This quotation within the quote above is clearly the rule in this State. The covenant in the instant suit though

does have the effect of extinguishing the cause of action against the wrongdoer and since this is true it clearly has the effect of extinguishing the cause of action against his superior.

After a very careful consideration we must overrule the petition to rehear.