WHARTON TRANSPORT
CORPORATION,
Appellant,

v.

Dr. James T. BRIDGES, Appellee.

Supreme Court of Tennessee.

July 7, 1980.

Joseph A. Heffington, III, Holt, Batchelor, Spicer & Ryan, Memphis, for appellant.

John J. Thomason, Jerry E. Mitchell, Gail M. Simonton, Thomason, Crawford & Hendrix, Memphis, for appellee.

## OPINION

FONES, Judge.

This appeal involves a suit for indemnity brought by appellant, Wharton Transportation Corporation against appellee Dr. James T. Bridges. Appellant asserts that appellee negligently conducted a physical examination of Martin Lawson, a prospective employee of appellant; that appellee negligently certified Lawson as physically fit to drive a truck in interstate commerce according to the requirements of the Motor Carrier Safety Regulations of the Interstate Commerce Commission and the Department of Transportation; that appellant hired Lawson as a truck driver relying upon appellee's certification; that while driving a truck for appellant, Lawson was involved in a collision proximately caused by Lawson's physical disabilities that appellee failed to discover; and that as a result of the collision appellant was required to pay $426,-314.25 to settle lawsuits brought by the injured third parties.

The trial judge directed a verdict for appellee at the close of all the proof holding that appellant failed to establish that a negligent examination by appellee was the proximate cause of the accident from which

the settlement expenses arose and that appellee could not be liable for the settlement expenses because such liability imposed a duty upon appellee that ran to an indefinite class of persons, for an indefinite amount and for an indefinite time. The Court of Appeals affirmed the directed verdict holding that the only proof of proximate cause established that appellant's loss was caused by Lawson's inattentive driving and that there was no proof causally linking appellant's loss to the alleged negligent examination.

We granted this appeal to determine the propriety of rendering a directed verdict in this case.

## I. The Employment of Lawson

Martin Lawson submitted to appellant Wharton an application for employment as a truck driver on May 22, 1972. That same day appellant sent Lawson to the Bridges Clinic, operated by appellee, for a pre-employment physical examination to determine if Lawson was fit to drive a truck. Passing this physical examination is a prerequisite for drivers employed by common carriers regulated by the Interstate Commerce Commission and the Department of Transportation. Lawson was accompanied to the Bridges Clinic by another Wharton employee, and when they returned, Lawson had in his possession a detailed certificate, signed on behalf of and with the approval of Dr. Bridges, stating that all physical characteristics including vision, reflexes, and extremities were normal and that Lawson was qualified to drive a motor vehicle in accordance with the Motor Carrier Safety Regulations. 49 C.F.R. 391.41–391.49.

Having passed the physical examination, Lawson was given a written examination by appellant and a test drive. In addition he drove on two student trips on which he was accompanied by another Wharton employee. His performance was deemed satisfactory, and on May 25 he was assigned to drive his first solo trip to Black Fork, Ohio. On his return to Memphis at approximately 4:15 a. m. on May 27, Lawson pulled off the highway, for a reason unclear from the proof, and collided with a station wagon parked off the two westbound traffic lanes, in or beyond the emergency lane of the westbound side of I–40. The automobile was occupied by Sgt. Paul Rains and his four children who had pulled off the highway to sleep. The collision resulted in severe injuries to three children, the death of one child, and minor injuries to Sgt. Rains. Lawson was unhurt. Wharton's expenses in settling the claims of the Rains family are the basis for this suit.

## II. Lawson's Physical Condition

While in the process of settling the Rains family's claims, Wharton learned that Lawson, far from being physically fit prior to his employment, had been rated one hundred percent physically disabled and had severe vision defects. Doctor Robert Ackerman, one of Lawson's treating physicians, testified that Lawson suffered from the following permanent disabilities at the time he applied to work for Wharton:

1. Eyes: Lawson had chorioretinitis in both eyes, a condition which left him with a ninety–five percent loss of vision in his left eye and blurred vision in his right. The condition was permanent and could not be improved with corrective lenses. The overall effect of this condition left Lawson with a loss of sight ahead and to the lower right of his field of vision and with a significant impairment of depth perception.

2. Legs: Following surgery in 1958, Lawson contracted severe osteoarthritis in his left knee which compounded a ten percent loss of flexion and a propensity for the joint to lock, giving him a twenty percent disability to the body as a whole; he also had a functional debility in his right leg and ankle which caused a thirty percent disability to the body as a whole.

3. Spinal Column: Lawson was suffering from a chronic degenerative disc disease which affected his neck and lower back, causing a forty percent permanent disability to the body as a whole. Both pain and problems with maneuverability of the neck and head resulted from this disease.

4. Lawson was suffering from chronic fatigue, depression, and emotional exhaustion stemming from his multiple physical ailments.

■ Doctor Ackerman testified that as of 1967, five years before this medical examination, Lawson was one hundred percent permanently physically disabled and unemployable. None of these physical disabilities were listed on the physical examination sheet containing Dr. Bridges' signature, which Lawson submitted to Wharton. Doctor Bridges admitted that in exercising a reasonable degree of medical care and skill ordinarily possessed by physicians in Memphis performing a similar examination the physical disabilities of Martin Lawson would have been discovered. Doctor Bridges also admitted that Lawson's vision defects alone would have disqualified him from driving a truck in interstate commerce under the ICC regulations. Thus, the record reflects evidence from which the jury could conclude that appellee negligently conducted the physical examination. Two issues remain: first, whether material evidence exists from which a jury could reasonably conclude that the negligent examination was a proximate cause of the accident from which appellant incurred the settlement expenses; and second, does appellant have an implied right of indemnity arising out of Dr. Bridges' breach of the contractual duty to accurately disclose Lawson's physical condition.

### III. *Proximate Cause*

The trial judge directed a verdict for appellee in this case on the issue of proximate cause and held that the accident was caused by Lawson's inattentive driving and that appellant failed to offer any proof that the inattentive driving was in any way related to Lawson's vision defects. The trial judge relied on the following testimony of Sgt. Rains in which he relates a hearsay statement of Lawson concerning the accident:

"A . . . Mr. Lawson and I–After the children were taken out of the vehicle, of course–Mr. Lawson and I walked a little ways past the car up the little incline there and, of course, we got us a cigarette, and we were smoking, and Mr. Lawson said, you know, 'I'm sorry the accident happened. I'm very sorry.' He said he was having problems with his vehicle. He had had some mechanical problems with it down the road and prior some place else, and he was pulling off to the side of the road to see if he could take care of it, and he said as he was pulling off the road, he said he looked down and when he looked back up, there I was, and it was too late to get away from me.

. . . . .

Q I thought you said Mr. Lawson told you he looked down and when he looked up again, there you were, and he couldn't stop.
A That's right. That's what he said. He said when he started pulling off the side of the road he looked down–and he didn't say for what reason–but he looked back up, and there I was, and it was too late to get away from me.
Q When he said he looked down, do you understand he was looking down into the cab?
A No, sir.
Q What do you take that to mean?
A He didn't explain it.
Q But he didn't see your car until he looked back up?
A Yes, sir."

The Court of Appeals relied upon the same testimony in affirming the directed verdict.

"The next question is: Is there any proof that the inattentive driving was caused by the faulty eyesight? It seems to us to make little difference how many eyes you have; if what you have is looking down toward the floor board instead of the road ahead. There is simply no showing of a causal connection between the negligence charged as a proximate cause and the damages suffered by Wharton."

■ In Tennessee the requirements for sustaining a directed verdict are clear,

"On review of the grant of a directed verdict on motion of a defendant, it is not the office of an appellate court to weigh the evidence. Rather, it must take the strongest legitimate view of the evidence in favor of the plaintiff, indulging in all reasonable inferences in his favor, and disregarding any evidence to the contrary. The trial judge's action may be sustained only if there is no material evidence in the record that would support a verdict for the plaintiff, under any of the theories that he has advanced." *Cecil v. Hardin*, 575 S.W.2d 268, 271 (Tenn.1978). From our review of the record we are of the opinion that the trial court and Court of Appeals have incorrectly relied upon this statement by Lawson in directing a verdict for appellee. In our opinion the question of proximate cause should have been submitted to the jury.

The accident occurred at approximately 4:15 a. m. on May 27, 1972, on the westbound side of I–40 near Brownsville. At the site of the accident the road is straight and level. Testimony indicates that at the time of the accident, it was dark, there was no moon, and the weather was clear, however, Ed Smith, an attorney who had represented the Rains family testified that Lawson claimed he had driven through patches of dense ground fog prior to the accident. Testimony indicates that the Rains' vehicle was parked approximately two–thirds off of the paved emergency lane.

Lawson was the only witness to the accident but he did not testify in this lawsuit. Three persons testified concerning statements Lawson made to them about the accident. The trial court and Court of Appeals relied upon the statement made to Sgt. Rains. Lawson's version of the accident in that statement, however, is not consistent with certain physical evidence introduced and with statements he made to Sgt. Buck, the highway patrolman who investigated the accident, and to Ed Smith.

Lawson told Sgt. Rains that he pulled into the emergency lane to check a mechanical problem with the truck. Lawson told Sgt. Buck that he pulled over to urinate and did not mention any mechanical problem. Lawson told Rains that he "looked down" just prior to the accident and he did not see the Rains' car until he looked up again. Sgt. Buck was asked: "Question: Did Mr. Lawson give you any reason at all why he did not see the Rains' vehicle before he hit it with the tractor trailer? Answer: No, sir. None." Lawson told Sgt. Buck that he did not see the Rains' vehicle and did not apply his brakes before he hit it; "that he was on it before he saw it." Sgt. Buck testified, however, that he measured skid marks from Lawson's truck, which began 42 feet before the point of impact with the automobile.

■ In light of the testimony revealing Lawson's conflicting versions of the events surrounding the accident, reasonable minds could differ as to how and why the accident occurred. This Court has defined proximate cause or, more properly, causation in fact as "that act or omission which immediately causes or fails to prevent the injury; an act or omission occurring or concurring with another which, if it had not happened, the injury would not have been inflicted." *Tennessee Trailways, Inc. v. Ervin*, 222 Tenn. 523, 528, 438 S.W.2d 733, 735 (1969). Taking the evidence most favorable to appellant and giving appellant all reasonable inferences we think a jury could reasonably find that Lawson's physical disabilities were the proximate cause of the accident.

Lawson was afflicted with chorioretinitis, which affected his vision ahead and to the lower right--the location of the Rains' automobile as Lawson pulled onto the emergency lane. There was medical testimony that the loss of vision in his left eye adversely affected his depth perception. Lawson told Sgt. Buck that he never saw the Rains' vehicle until he was on it, and he gave no reason for failing to see the vehicle and its large reflectorized taillights. In addition to his visual defects, the chronic fatigue and restricted motion from the disabilities in his back and legs could have slowed his reaction time. Both Sgt. Buck and Sgt. Rains testified that Lawson looked very tired when they saw him after the accident.

Reasonable men could conclude that Lawson's physical disabilities precluded him from seeing and avoiding the Rains' vehicle.

■ As discussed above, evidence exists from which a jury could reasonably find that appellee was negligent in supervising or conducting the physical examination and certification of Lawson. Undisputed proof establishes that Lawson's disabilities would disqualify him from driving a truck in interstate commerce according to the Motor Carrier Safety Regulations. Under this view of the evidence a jury could reasonably find that but for the negligence of appellee this accident would not have occurred. When material issues of fact exist, a directed verdict is inappropriate. *See City of Columbia v. CFW Construction Co.,* 557 S.W.2d 734 (Tenn.1977).

IV. *Foreseeability of Consequences of Negligent Physical Examination*

■ Evidence introduced in this case convinces us that the injuries suffered by the Rains family and the manner in which they occurred were reasonably foreseeable to appellee if he negligently performed the pre-employment physical examination of Lawson. First, on the form on which he certified that Lawson was physically fit, appellee was put on notice of the requirements and importance of a properly conducted physical examination. The form contains the following statements:

### INSTRUCTIONS FOR PERFORMING AND RECORDING PHYSICAL EXAMINATIONS

The examining physician should review these instructions before performing the physical examination. Answer each question yes or no where appropriate.

The examining physician should be aware of the rigorous physical demands and mental and emotional responsibilities placed on the driver of a commercial motor vehicle. In the interest of public safety the examining physician is required to certify that the driver does not have any physical, mental, or organic defect of such a nature as to affect the driver's ability to operate safely a commercial motor vehicle.

General information. The purpose of this history and physical examination is to detect the presence of physical, mental, or organic defects of such a character and extent as to affect the applicant's ability to operate a motor vehicle safely. The examination should be made carefully and at least as complete as indicated by the attached form.

### § 391.41 PHYSICAL QUALIFICATIONS FOR DRIVERS

(a) A person shall not drive a motor vehicle unless he is physically qualified to do so and has on his person the original, or a photographic copy, of a medical examiner's certificate that he is physically qualified to drive a motor vehicle.

(b) A person is physically qualified to drive a motor vehicle if he—

(2) Has no impairment of the use of a foot, a leg, a hand, fingers, or an arm, and no other structural defect or limitation, which is likely to interfere with his ability to control and safely drive a motor vehicle, or has been granted a waiver pursuant to § 391.49 upon a determination that the impairment will not interfere with his ability to control and safely drive a motor vehicle;

(9) Has no mental, nervous, organic, or functional disease or psychiatric disorder likely to interfere with his ability to drive a motor vehicle safely;

(10) Has distant visual acuity of at least 20/40 (Snellen) in each eye without corrective lenses or, visual acuity separately corrected to 20/40 (Snellen) or better with corrective lenses, distant binocular acuity of at least 20/40 (Snellen) in both eyes with or without corrective lenses, field of vision of at least 70° in the horizontal meridian in each eye, and the ability to recognize the colors of traffic signals and devices showing standard red, green, and amber.

Second, these pre–employment physicals for prospective truck drivers were a large portion of appellee's industrial medicine practice. Appellee testified that he kept charts for at least twenty–three trucking companies on which he listed the names of drivers examined at his clinic. Clearly, appellee was familiar with the purpose and procedure involved in these examinations. Finally, there is testimony that Lawson's physical disabilities were not readily apparent to the untrained eye. James Rushing, an acquaintance of Lawson's and fellow Wharton employee, testified he never observed anything about Lawson that made him think he was physically disabled. Joe Spicer, an attorney representing appellant, testified that prior to learning of Lawson's disabilities he interviewed Lawson and could not discern that he was blind in his left eye. If Lawson's disabilities were not obvious, a properly conducted physical examination becomes much more important. We think there is material evidence to support a finding that the injuries suffered by the Rains family were reasonably foreseeable to appellee in that he knew the purpose of the examination and its importance in highway safety and that failure to properly conduct the examination would increase the risk of harm to members of the motoring public. We are not attempting to make the physician an insurer of highway safety, but his duty to properly conduct the physical examination extends beyond his contractual responsibilities to the driver and the trucking company.

Our research indicates other jurisdictions have permitted a cause of action by a third party against a physician for negligence in treatment of a patient. In *Kaiser v. Suburban Transportation System*, 65 Wash.2d 461, 398 P.2d 14 (1965), a bus passenger brought suit against the bus company, the driver, and the physician who prescribed an antihistamine to the driver, for injuries sustained when the driver fell asleep at the wheel and struck a telephone pole. The driver's lapse of consciousness was attributed to the side effects of the drug, and the driver testified that the physician gave him no warning concerning possible side effects. The trial judge dismissed the suit against the physician, but the Supreme Court of Washington reversed and permitted the cause of action holding:

> "The standard of care shown in the administration of the drug to a patient implicitly included the community in which Dr. Faghin engaged in the medical practice.
>
> .     .     .     .     .
>
> . . . [T]he doctor would . . . be liable if the jury finds the harm resulting to the plaintiff was in the general field of danger, which should reasonably have been foreseen by the doctor when he administered the drug."[1]  398 P.2d at 16.

The Iowa Supreme Court in *Freese v. Lemmon*, 210 N.W.2d 576 (Iowa 1973), permitted a cause of action against a physician by a pedestrian injured by a motorist who suffered a seizure and ran off the road. The complaint alleged that the physician knew that the motorist had suffered an earlier seizure and that the physician negligently failed to employ recognized procedures to diagnose the cause of the seizures and to advise the motorist not to drive because of the risk of danger from another seizure.[2]

---

1. In a per curiam order the Supreme Court of Washington made a change in this sentence, and as changed it reads as follows:

    " . . . [T]he doctor would . . . be liable if the jury finds he failed to give warning of the side effects of the drug, since the harm resulting to the plaintiff was in the general field of danger, which should reasonably have been foreseen by the doctor when he administered the drug." *Kaiser v. Suburban Transportation System*, 65 Wash.2d 461, 401 P.2d 350 (1965).

2. On remand for a new trial, a verdict was directed for the doctor for failure to prove negligence. This case was again appealed to the Iowa Supreme Court, which addressed the question of duty as follows:

    "A threshold question relates to the issue of Dr. Dieckmann's duty to plaintiff as a member of the public. Our opinions on the first appeal left that question undecided. Dr. Dieckmann asks us to resolve it now. He of course espouses the dissenting view on the

In the instant case, the trial judge directed the verdict on the additional ground that no duty ran from appellee to the Rains family, and, therefore, appellee could not be required to indemnify appellant for expenses incurred in settling their claims. In his opinion, to impose a duty would unreasonably expose appellee to liability to an unlimited class of persons, for an unlimited amount of damages and for an unlimited time. This ruling was based on the venerable opinion of Judge Cardozo in *Ultramares Corp. v. Touche*, 255 N.Y. 170, 174 N.E. 441 (1931).

In *Ultramares*, defendant was hired to prepare and certify a balance sheet for Stein and Company who used the balance sheet to borrow money. Defendant was negligent in examining the financial records of Stein and Company and mistakenly certified that it was solvent, when in fact it was insolvent. Plaintiff loaned money to Stein and Company relying on the balance sheet prepared by defendant and when it could not collect the money loaned, it sued defendant for negligent misrepresentation. The New York Court of Appeals refused to extend to defendant liability for plaintiff's losses. To do so, the Court reasoned, would unreasonably expose defendant to liability indeterminate as to amount, time, class, or number.

The duty that Dr. Bridges owed to appellant and its foreseeable consequences are clearly distinguishable from the facts of *Ultramares*. Here, privity exists between appellant and Dr. Bridges, an element lacking in *Ultramares*, and the duty owed was to conduct a pre–employment physical examination in accord with the recognized standard of acceptable professional practice in the medical profession and the specialty thereof, if any, prevailing in the community in which he practiced. In our opinion, it was reasonably foreseeable that, if an examination fell below that standard and resulted in certifying an unfit person as phys-

ically qualified to drive a commercial vehicle, the probable consequences would be a highway accident causing loss or injury to a third party or parties. Obviously, the overwhelming probabilities were that the consequence would be a single accident, and, although indefinite as to time and place, that consequence falls far short of the indeterminate consequences held unreasonable in *Ultramares*.

### V. *Indemnity*

We have concluded that a jury question exists as to whether Lawson's physical disabilities were a proximate cause of the accident. The legal issue of appellant's right of indemnity does not arise unless the jury finds that one or more of Lawson's physical disabilities was a proximate cause of the accident. But, if appellants have no right of indemnity, assuming an affirmative jury verdict on the proximate cause issue, the case should be dismissed. Hence, we address the indemnity issue.

Appellant's liability to the Rains family was predicated solely on the negligence of its servant Lawson and the invocation of the doctrine of respondeat superior. This Court has held that a party whose only liability in tort rests upon the doctrine of respondeat superior does not occupy the position of a wrongdoer. *Stewart v. Craig*, 208 Tenn. 212, 216, 344 S.W.2d 761, 762 (1961). Even though technically both master and servant are joint tort feasors if the master's liability is predicated solely on the doctrine of respondeat superior, the master has a cause of action against the servant for the amount the master is compelled to pay a third party. *Stewart v. Craig, supra*. The master's right of action against the servant is based upon the implied right of indemnity. *See, Stewart v. Craig, supra* and 42 C.J.S. *Indemnity* § 21.

Tennessee has adopted the Uniform Contribution Among Tort–Feasors Act, T.C.A.

first appeal, while plaintiffs advance the view in the special concurrence.

We find no necessity to resolve that issue today. After examining the evidence, we conclude that the trial court and Court of

§ 23–3101 through § 23–3106. The act expressly excludes the right of indemnity, and indemnity remains a right subject to the common law of this State. T.C.A. § 23–3102. *See also Craven v. Lawson*, 534 S.W.2d 653 (Tenn.1976).

There is substantial support in the case law of our sister states for the rule that an indemnitee who is not a wrongdoer but has been compelled to pay damages to a third party has a right of implied indemnity arising out of a contractual relationship with the indemnitor, whose breach of the contract has caused the injury to the third parties. This principle has been applied in many widely varying factual situations and relationships between the indemnitor and the indemnitee including that of independent contractor, the relationship that Dr. Bridges occupied with appellant. *See* 41 Am.Jur.2d *Indemnity* § 20 and cases cited in footnotes seventeen and twenty; 88 A.L.R.2d 1356 § 2; and 97 A.L.R.2d 621.

Our own case of *Memphis and Charleston R. R. v. Greer*, 87 Tenn. 698, 11 S.W. 931 (1889), is illustrative of an application of that principle. The railroad sued its employee Greer seeking indemnity for its contingent liability to Powell. Greer was the conductor in charge of a freight train. One of his duties was to prevent persons from riding on the freight train because freight trains are not adapted to carrying persons and the hazard to them is greater than on passenger trains. Greer allowed Powell, his kinsman, to ride the freight train, in breach of his duties to his employer, and Powell was injured. The Court reasoned that the injury would not have occurred but for Greer's breach of duty. This Court held that the railroad was entitled to indemnification from Greer for such damages as it might be compelled to pay Powell, who had a suit pending against the railroad in Mississippi.

The Court's rationale was bottomed upon the fact that the railroad's liability to Powell was predicated solely on the doctrine of respondeat superior, satisfying the prerequisite that the railroad was not a wrong-doer, coupled with the following principle of law, quoted with approval from Storey on Agency, § 217(c):

> " 'Whenever an agent violates his duties or obligations to his principal, whether it be by exceeding his authority or by positive misconduct, or by mere negligence or omission in the proper functions of his agency, or in any other manner, and any loss or damage thereby falls on his principal, he is responsible therefor, and must make a full indemnity therefor. In such case it is wholly immaterial whether the loss or damage be directed to the property of the principal, or whether it arises from the compensation or reparation which he has been obliged to make to third persons in discharge of his liability to them for the acts or omissions of his agents. The loss or damage need not be directly or immediately caused by the act which is done or omitted to be done. It will be sufficient if it be fairly attributable to it as a natural result or just consequence.' " *Id.* at 702–03, 11 S.W. at 933.

This case falls squarely within the rationale of *Greer*. Appellant employed Dr. Bridges to examine Lawson for the express purpose of determining whether Lawson was physically fit to safely operate a commercial motor vehicle. The proof shows that Dr. Bridges was thoroughly familiar with both the ICC regulations prescribing physical qualifications for drivers and, implicit from his specialization in this type of examination, the consequences of certifying as physically fit a physically disqualified person. Appellant's liability to the Rains family was vicarious, predicated solely on the negligence of its servant Lawson. If Lawson's physical disabilities are found to be a proximate cause of the accident, the right of implied indemnity would arise as a matter of law. Parenthetically, the record suggests that Dr. Bridges may assert a factual defense based upon Lawson's substitution of another person in his place and stead. That issue is not before this Court, and nothing that we have said shall preju-

dice the right of Dr. Bridges to assert such defense.

The judgment of the Court of Appeals is reversed, and this cause is remanded to the Circuit Court of Shelby County, Tennessee, for a new trial. Costs in this Court are adjudged against Dr. Bridges. Costs below to abide the outcome of the litigation.

BROCK, C. J., and COOPER, HENRY and HARBISON, JJ., concur.

## ON PETITION TO REHEAR

FONES, Judge.

The petition to rehear on behalf of Dr. Bridges asserts that we erroneously assumed that appellant Wharton's liability to the Rains family was vicarious, predicated solely on the negligence of its servant, Lawson.

Wharton's complaint alleged that it was liable solely because of the doctrine of respondeat superior. One of the defenses asserted by Dr. Bridges, however, was that Wharton was guilty of independent, direct negligence in not discovering Lawson's physical disabilities and in entrusting its vehicle to him. It also appears that some evidence was adduced at trial in support of that contention, but the directed verdict granted on other grounds, of course, pretermitted a resolution of that issue.

Wharton's response to the petition to rehear insists that no substance exists as to that issue and, inferentially, that we could find as a matter of law that Wharton was not guilty of any act of independent negligence. That issue has not been determined in the trial court and it would be improper for us to rule upon it at this time. Suffice it to say that we were in error in overlooking the fact that the issue of Wharton's direct negligence was unresolved and that Dr. Bridges is entitled to pursue it upon the retrial of this case.

The erroneous assumption that Wharton's liability was solely vicarious caused us to treat this case as involving only the issue of indemnity. Wharton sued for indemnity or, in the alternative, contribution.

Although suits were filed against Lawson and Wharton in the United States District Court on behalf of the members of the Rains family injured in the accident, the suits were settled before trial. Thus, no judicial determination has yet been rendered concerning the legal liability of Lawson or Wharton or the factual basis of liability.

If upon retrial it is determined that any of Lawson's physical disabilities were a proximate cause of the accident, that Wharton was not guilty of any direct negligence in failing to discover Lawson's physical disability, and that Dr. Bridges was guilty of negligence, then, as we have said in the prior opinion, this is a case of indemnity.

If the factual determination, however, is that Lawson's physical disabilities were a proximate cause of the accident, that Wharton was guilty of negligence in failing to discover Lawson's physical disabilities, and that Dr. Bridges was also guilty of negligence, then Wharton would be entitled to contribution under the Uniform Contribution Among Tort Feasors Act. The trial court has correctly ruled that three of the Rains' family claims paid by Wharton more than one year prior to filing of this suit were barred by the one year limitation period of T.C.A. § 23–3104(d), but two other claims are not barred.

Upon retrial, to the extent that the evidence justifies submission to the jury, special interrogatories should be framed to determine whether a factual basis exists concerning Lawson's proximate negligence, whether Wharton was guilty of independent negligence in the respects charged, and whether Dr. Bridges was guilty of proximate negligence in failing to discover and disclose Lawson's physical disabilities.

We have considered the other issues raised in the petition to rehear and find them to be without merit. As modified herein, we adhere to our original opinion

and the petition to rehear is respectfully denied.

BROCK, C. J., and COOPER and HARBISON, JJ., concur.