IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 13, 2001 Session

## OLYMPIA CHILD DEVELOPMENT CENTER, INC., ET AL. v. CITY OF MARYVILLE, TENNESSEE

Appeal from the Circuit Court for Blount County
No. L-10699      W. Dale Young, Judge

 FILED APRIL 27, 2001 

No. E2000-02124-COA-R3-CV

The suit filed in this tort action originally sought a judgment against the defendant, City of Maryville ("the City"), for damages allegedly sustained by four plaintiffs when a van owned by the plaintiff Olympia Child Development Center, Inc. ("Olympia"), and driven by the plaintiff Lisa K. Murphy was struck by a vehicle driven by Rodney Parton, an off-duty police officer employed by the City. The trial court granted the City summary judgment as to the claims of the remaining plaintiffs, Olympia and Murphy, finding that their claims are barred by the doctrines of collateral estoppel and modified comparative fault. Only Olympia appeals. We affirm the grant of summary judgment, but base our affirmance on a ground other than the one utilized by the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HERSCHEL P. FRANKS and D. MICHAEL SWINEY, JJ., joined.

Kevin W. Shepherd, Maryville, Tennessee, for the appellant, Olympia Child Development Center, Inc.

Nathan D. Rowell, Knoxville, Tennessee, for the appellee, City of Maryville, Tennessee.

**OPINION**

### I. *Facts*

On November 13, 1995, the plaintiff Lisa K. Murphy was driving a van owned by her employer, the plaintiff Olympia, a Maryville day care center, in a westerly direction on Everett Avenue in Maryville. At the same time, Rodney Parton, an off-duty police officer employed by the defendant, the City, was driving a vehicle owned by his mother, Zula Parton, in a northerly direction

on South Everett High Road. The Olympia van was occupied by several children, including Kevin Tyler Clendenen and Andrew Tidwell.

When Murphy reached the intersection of Everett Avenue and South Everett High Road, she brought her van to a stop as required by the stop sign facing traffic proceeding in her direction. While stopped, Murphy observed a brown car pass in front of her at a high rate of speed. Following this, and after ascertaining, in her judgment, that the way was clear, she proceeded into the intersection, at which time her vehicle was struck in the left side by the front of the vehicle being driven by Rodney Parton. At the time of the collision, Parton and a passenger, his brother Tony Parton, who was also an off-duty police officer, were not in uniform. They were, however, in pursuit of the brown car that had passed in front of Murphy because that car had allegedly run Parton's vehicle off the road.

The accident resulted in injuries to Murphy; the minors, Kevin Tyler Clendenen and Andrew Tidwell; and both of the Partons. Olympia allegedly suffered economic losses and injury to its reputation.[1]

## II. *Procedural History of Instant Case*

On November 12, 1996, Murphy and Olympia, along with the two shareholders of Olympia, filed a complaint against the City "in as much [sic] as their agent, Rodney Parton, was the proximate cause of this accident." The City filed an answer, denying, among other things, that Parton was acting within the scope of his employment at the time of the accident. A motion for summary judgment was filed by the City on January 30, 1998. It was granted by the trial court by way of an order entered March 27, 1998. The trial court apparently found that the facts before it conclusively established that Parton was not acting within the scope of his employment with the City at the time of the collision.

On the first appeal in this matter, we affirmed the judgment of the trial court as to the claims of the Olympia shareholders[2] and as to a portion of the claims of Olympia and Murphy, but vacated the trial court's judgment pertaining to the allegation of the complaint that the City was vicariously liable for the conduct of Parton. As to this allegation, we held, on the record then before us, that there was a disputed issue of material fact as to whether Parton "was acting within the scope of his employment [with the City] at the time of the accident." *Olympia Child Dev. Ctr., Inc. v. City of Maryville*, C/A No. 03A01-9804-CV-00136, 1999 WL 64271, at \*4 (Tenn. Ct. App. E.S., filed January 29, 1999). We remanded for further proceedings.

---

[1]While not entirely clear from the complaint, it seems obvious from the record that Olympia's van suffered significant damage in the accident.

[2]As to the shareholders, we concluded that dismissal was appropriate but not on the ground of lack of agency. We basically determined that the shareholders had failed to state a claim upon which relief could be granted.

While the instant case was pending in the trial court following remand, other litigation that arose out of the subject accident was proceeding apace in that court. The resolution of Olympia's claim in that litigation was destined to have an impact on the suit filed by Olympia against the City. Because of this impact, we will now discuss the related litigation in some detail.

### III. *The Related Litigation*

The complaint in the instant case was not the first complaint filed as a result of this accident. That honor went to an action filed on May 28, 1996, by the parents of Kevin Tyler Clendenen, one of the minors riding in the Olympia van at the time of the accident. The Clendenens filed suit against Rodney Parton; his mother, Zula Parton, on the theory of *respondeat superior*; Olympia; and Murphy. Murphy and Olympia responded by filing a cross-claim against Rodney Parton and his mother. The cross-claim does not mention the City of Maryville or Parton's employment as a police officer. It also does not allege that Parton was acting as an agent of the City at the time of the accident.

In the Clendenens' action, Melissa Tidwell, acting individually and on behalf of her son, Andrew Tidwell – the other child injured in the accident – was permitted to intervene and assert a claim against the Partons. Later, in the same action, Rodney Parton filed a cross-claim against Olympia and Murphy.

Finally, a second related lawsuit – this one by Tony Parton and his wife, Tania Parton – was filed on October 11, 1996, against Olympia, Murphy, Rodney Parton, and his mother. Both of these two related lawsuits were consolidated for trial. Prior to trial, however, the Clendenens settled their suit against Rodney Parton and his mother. They non-suited their complaint as to Olympia and Murphy.

On the day of trial, but before a jury was impaneled, the trial court further considered Rodney Parton's motion for summary judgment as to Olympia's cross-claim against him and his mother. The court below granted Parton's motion and dismissed Olympia's cross-claim. On appeal, we reversed and remanded for a new trial. For more details regarding this phase of the litigation, the reader is referred to our opinion filed in that appeal. *See **Olympia Child Dev. Ctr., Inc. v. Parton***, C/A No. E1999-02448-COA-R3-CV, 2000 WL 225894 (Tenn. Ct. App. E.S., filed February 29, 2000). In reversing the trial court, we remanded for a new trial, but solely on the issues of causation and damages. We noted that the jury's allocation of fault – in the trial that took place while the appeal was pending – "as already determined [was] not to be relitigated." 2000 WL 225894 at *7.

Following the trial court's dismissal of Olympia's cross-claim, but before our reversal of that action, Olympia was no longer in these consolidated actions as a claimant; but it was still very much a party to the proceedings in a defensive posture, since it was then defending claims asserted by Rodney Parton, Tony Parton, and the latter's wife.

As previously noted, the remaining claims were submitted to a jury. Following a three-day trial, the jury found, in the words of the February 18, 1999, judgment entered on the jury's verdict, "that Rodney Parton was 100% at fault for the accident, and that Lisa K. Murphy, as agent and employee of Olympia Child Development Center, Inc. was zero at fault." Money judgments were entered against Rodney Parton in favor of Andrew Tidwell; his mother, Melissa Tidwell; and Murphy. All claims against Murphy and Olympia were dismissed as a result of the jury's verdict.[3]

IV. *The Two Remaining Claims*

When the dust had settled after the remands following the two successful Olympia appeals, and after the final judgment following the jury trial, there were two claims still pending in the trial court: ***Olympia v. City of Maryville*** and ***Olympia v. Parton***.[4] The final resolution of the latter case had the effect of sounding the death knell for Olympia's claim in ***Olympia v. City of Maryville***.

A.

On September 5, 2000, Olympia settled its claim in ***Olympia v. Parton*** when its agent executed on its behalf a "Release of All Claims" in consideration of a payment of $41,417.10. In executing the release, Olympia stated that it did

> hereby and for their heirs, executors, administrators, successors and assigns release, acquit, and forever discharge RODNEY PARTON, ZULA PARTON and ALLSTATE INSURANCE COMPANY and their agents, servants, successors, heirs, executors, administrators and all other persons, firms, corporations, associations or partnerships of and from any and all claims, actions, causes of action, demands, rights, damages, costs, loss of service, expenses and compensation whatsoever which the undersigned now have or which may hereafter accrue on account of or in any way growing out of any and all known and unknown, foreseen and unforeseen bodily and personal injuries, mental and emotional distress and the consequences thereof resulting or to result from the accident, casualty or event which occurred on or about the 13th day of November 1995 in Blount County, Tennessee. It is the understanding, agreement and intention of releasors that the aforesaid consideration is and represents a full and complete compromise settlement, accord and satisfaction for any and all of the aforesaid claims and matters being released herein.

---

[3]Tony Parton and his wife later non-suited their action against Rodney Parton. All claims against Zula Parton were also voluntarily dismissed.

[4]We recognize that Murphy still had a pending claim against the City; but since she did not appeal the trial court's dismissal of her claim against the City, we will not further notice her involvement in this litigation.

As a result of this settlement, an order of compromise and dismissal was entered in the trial court on September 15, 2000. The order dismissed Olympia's claim "with full prejudice." As the appellant Olympia points out, the order recites that

> Olympia Child Development Center, Inc. does not agree that they have been fully compensated as a result of injuries claimed in their Complaint, although claims between these parties are herein compromised by agreement.

With the entry of the order, *Olympia v. Parton*, passed into history.

B.

On August 6, 1999, before *Olympia v. Parton* was settled, the City filed a new motion for summary judgment in *Olympia v. City of Maryville*. In its motion, the City claimed that there were no material issues of fact as to the following legal issues:

> Plaintiffs' claims against the City of Maryville are barred by the doctrines of collateral estoppel and *res judicata.*

> Plaintiffs' claims against the City of Maryville are barred by the doctrine of modified comparative fault, as Plaintiff failed to include the City of Maryville in a previous suit involving the same issues.

In support of its motion, the City relied upon the jury's verdict in the two related lawsuits – the verdict finding Parton to be 100% at fault and Murphy, and hence Olympia, 0% at fault.

On July 28, 2000, the trial court filed a memorandum opinion that recites the following:

> The Court has carefully studied the Briefs of Law provided by Counsel for the respective parties and concludes that the Doctrine of Collateral Estoppel applies to the case at bar.

> The Court is persuaded that the Plaintiffs' claims against the City of Maryville are further barred by the Doctrine of Modified Comparative Fault inasmuch as there has been a judicial determination that Rodney Parton (individually) is 100% at fault in connection with the automobile accident which is the subject of the case at bar.

> Accordingly, the Court is of the opinion and finds that the Defendant's Motion for Summary Judgment is well taken and is granted.

An order was subsequently entered dismissing the complaint of Olympia in the case of ***Olympia v. City of Maryville***. It is that dismissal that is now before us on this appeal. As can be seen, this is the third time that the subject accident and some of the resulting claims have found their way to the Court of Appeals.

## V. *Grounds of the City's Motion for Summary Judgment*

The gist of the City's case is found in the following statement made by it at the trial court level in a filing in support of its most recent motion for summary judgment:

> Plaintiff's claims against the City of Maryville are barred by the doctrines of *res judicata* and collateral estoppel, as it has already been judicially determined that Rodney Parton was responsible for the accident giving rise to both this lawsuit and the previous lawsuit.

We agree with the City that it has already been judicially determined – in a way that binds the parties in the instant case – that Parton was 100% at fault in the accident; but the jury in the related lawsuits did not have before it the issue of whether Parton was acting within the scope of his employment with the City at the time of the accident. Parton did not plead immunity under T.C.A. § 29-20-310(b) (2000).[5] Since the immunity issue was not pleaded, there was no reason for the jury to decide whether or not Parton was acting within the scope of his employment with the City. The jury verdict means that Parton, as the driver of the vehicle, was the sole cause of the accident. The City would have us hold that the jury found that Parton, *while not acting as a police officer*, was the sole cause of the accident. There is nothing in the pleadings and jury verdict to justify such a holding. Whether the jury concluded that Parton was or was not on police business at the time of the accident was immaterial to the issue before them, *i.e.*, whether the person who crashed his vehicle into the Olympia van was at fault and, if so, to what extent.

While the rules of *res judicata* and collateral estoppel are clear, *see **Massengill v. Scott**, 738 S.W.2d 629 (Tenn. 1987), they have no application in the instant case where the issue of agency was not before the jury in the earlier litigation. Just because Parton *might* have been entitled to raise a T.C.A. § 29-20-310(b) immunity defense does not mean that the jury's verdict, in some mystical way, addressed this never-raised issue or has the effect of barring the instant case. Parton chose not to raise a T.C.A. § 29-20-310(b) defense. It may be that he chose not to raise this defense because he honestly believed that he was not engaged in police business at the time of the accident; but on

---

[5]T.C.A. § 29-20-310(b) (2000) provides, in pertinent part, as follows:

> No claim may be brought against an employee or judgment entered against an employee for damages for which the immunity of the governmental entity is removed by this chapter unless the claim is one for medical malpractice brought against a health care practitioner.

the other hand, he may have chosen not to raise this defense out of concern for his job[6] or maybe for a tactical reason associated with his idea as to the best way to defend the action. We do not know precisely why he failed to raise the immunity defense. One thing, however, is sure: his failure to raise this immunity defense does not, *ipso facto*, translate into a binding factual determination that he was *not* acting within the scope of his employment with the City at the time of the accident. The jury's verdict is neutral on this issue.

If the City is arguing that the jury's determination that Parton was 100% at fault precludes any further allocation of fault, the answer to this is simple: Olympia is not attempting to allocate *new* fault to the City. It is simply trying to prove agency and thereby make the City responsible, *vicariously*, for Parton's 100% of fault. There is nothing in the doctrines of *res judicata* or collateral estoppel that precludes Olympia from attempting to prove agency and thereby cast the City in judgment for Parton's fault. On the contrary, the jury's finding that Parton was 100% at fault – being *consistent* with Olympia's theory of liability against the City and being a determination that has a preclusive effect as between Olympia and the City – would have been conclusive as to the threshold issue of fault in the event *Olympia v. City of Maryville* had gone to trial.[7]

We find and hold that summary judgment cannot be justified on the grounds asserted by the City and adopted by the trial court. However, we believe the City is entitled to summary judgment on the basis that Olympia's settlement of its claim against Parton, who Olympia contends, was acting within the scope of his employment with the City at the time of the accident, extinguished the liability of Parton's alleged principal.[8]

## VI. *The Final Chapter*

Olympia settled its claim against Parton, accepted $41,417.10 from him and/or his insurance company, and released him from liability. As a result of the settlement, Olympia is obviously precluded from pursuing its claim in the case of *Olympia v. Parton*. It is also precluded from pursuing its claim in *Olympia v. City of Maryville* because the settlement has the effect of also extinguishing the vicarious liability of the City.

A release of an employee discharges the employer from vicarious liability. *See Tutton v. Patterson,* 714 S.W.2d 268, 271 (Tenn. 1986) (release of nurses discharges vicarious liability of doctor); *Craven v. Lawson,* 534 S.W.2d 653, 654, 657 (Tenn. 1976) (release of employee discharges employer's liability predicated on master-servant or principal-agent relationship); *Stewart v. Craig,* 208 Tenn. 212, 218, 344 S.W.2d 761, 763 (1961) (covenant not to sue given to employee releases employer from respondeat superior liability); *McGee v. County of Wilson,* 574 S.W.2d 744, 745,

---

[6]There is evidence before us that he was discharged as a result of this accident and its aftermath.

[7]*Cf. Beaty v. McGraw*, 15 S.W.3d 819 (Tenn. Ct. App. 1998).

[8]This issue was not raised in the briefs. The Court, *sua sponte*, raised it at oral argument. The parties were asked to address certain cases dealing with this issue. Both sides responded in writing to the Court's request.

747 (Tenn. Ct. App. 1978) (release of sheriff's deputy precludes recovery from county on the basis of vicarious liability). Because the City cannot be held vicariously liable for Parton's conduct as a result of the release of Olympia's claim against Parton and because vicarious liability was the only basis of the cause of action that survived our first opinion in ***Olympia v. City of Maryville***, we conclude that the City was entitled to summary judgment. Settlement of the claim against Parton "extinguish[ed] the cause of action against the wrongdoer and since this is true it clearly has the effect of extinguishing the cause of action against his superior." ***Stewart***, 344 S.W.2d at 765. It matters not one whit that Olympia claims that it was not fully compensated as a result of the settlement with Parton. It is not the amount or adequacy of the settlement with the agent that has the effect of extinguishing the City's liability. Rather it is the mere fact that the agent's liability was extinguished by the release. If the agent can no longer be found liable in a judicial proceeding – and, in this case, he clearly cannot – then it automatically follows that the principal cannot be held liable, where, as here, the sole basis of the cause of action against the principal is vicarious in nature.

We therefore find and hold that the trial court's judgment was correct, but for a reason other than the rationale expressed by that court. "We can affirm a trial court's judgment if the result is correct even though we disagree with the lower court's reasoning." ***Murvin v. Cofer,*** 968 S.W.2d 304, 311 (Tenn. Ct. App. 1997); Tenn. R. App. P. 36(a).

VII.

The judgment of the trial court is affirmed. This case is remanded for collection of costs assessed below, pursuant to applicable law. Costs on appeal are taxed to the appellant, Olympia Child Development Center, Inc.

_____
CHARLES D. SUSANO, JR., JUDGE