Wayne A. ROGERS and wife, Glenda Faye Rogers, Plaintiffs–Appellees,

v.

DONELSON–HERMITAGE CHAMBER OF COMMERCE, the Ladies Hermitage Association, Stones River Publishing Company, Inc., and Jane Eakes, Defendants–Appellants.

Court of Appeals of Tennessee, Middle Section.

Nov. 21, 1990.

Application for Permission to Appeal, Denied by Supreme Court March 11, 1991.

C.J. Gideon, Jr., Nashville, for plaintiffs-appellees.

W. Gregory Miller, Nashville, for defendant-appellant Donelson–Hermitage Chamber of Commerce.

C. Hayes Cooney, John B. Carlson, Nashville, for defendant-appellant Ladies Hermitage Ass'n.

Robert Orr, Jr., Nashville, for defendant-appellant Jane Eakes.

## OPINION

CANTRELL, Judge.

In this wrongful death action by the parents of a teenage girl, we granted an interlocutory appeal under Rule 9, Tenn.R.App. Proc. to examine (1) the question of the effect of a release of liability signed by one of the parents prior to the injury, and (2) whether Tenn.Code Ann. § 70–7–102 relieved the landowner of any duty of care to the deceased. We hold that the statute does not apply to this case and that the parents have not waived the right to recover under the wrongful death statute.

The Ladies Hermitage Association sponsors an annual Andrew Jackson Day celebration at The Hermitage in Nashville, Tennessee. A horse racing event is held each year in conjunction with the celebration. In 1987, that race was sponsored by the Donelson–Hermitage Chamber of Commerce and Stones River Publishing Company, and was directed by a Mrs. Jane Eakes. All four of these parties are defendants in the underlying action.

The plaintiffs' daughter, Brandy Nichole Rogers, was entered as a participant in the May 16, 1987 race. To participate Brandy had to obtain a written release of liability from her parents. The night before the race, Brandy spoke with her mother on the telephone and told her what the release should say. The record does not reflect who related the necessary wording to Brandy, nor is it clear if such a release was required of each participant. The plaintiffs assert that one girl was allowed to race with nothing more than a permission slip

from her mother. The defendants contend that if this is true, it was merely an oversight of their rule that everyone who wished to race was required to provide a release of liability. In any event, Brandy's mother signed a handwritten note, stating "Brandy Rogers has my permission to race today. Under no circumstances will anyone or anything be liable in case of an accident." Brandy gave that note to the defendant, Jane Eakes, just prior to the race.

The plaintiffs' complaint alleges that the horse race began at a point that ran gradually downhill, parallel to a fence, to a finish line just adjacent to a large tree. At the finish line, the topography of the land changed from the gradual downhill run to a more severe slope. Upon reaching the finish line, the riders were required to turn right and run downhill into an open, unmarked run-out area. This run-out area was adjacent to a fence with a gate, which all participants were instructed to use for entering and exiting the field with their cars, trucks, and trailers.

As Brandy crossed the finish line and raced into the run-out area, she turned the horse's head hard to the left to avoid two vehicles that had crossed her path. The horse went down and rolled over Brandy, causing a severe brain contusion and a basilar skull fracture. Brandy Rogers died two days later from these injuries.

The complaint alleges that the defendants failed to provide a reasonably safe race course and run-out area and failed to prevent foreseeable risks of unjustifiable danger to race participants. The plaintiffs assert that during a prior race in 1986, several horses fell as they came downhill toward the run-out area and that at least one person suffered a broken leg. The plaintiffs claim that such disregard of spe-cific warnings, along with the defendants' failure to minimize the risk of harm by allowing traffic to enter the run-out area before, during, or after a race had begun, constitutes reckless disregard for the safety of those participating in the race.

In their answers to the complaint, the defendants raised several affirmative defenses including contributory negligence, assumption of the risk, and the validity of the release of liability. Two of the defendants, Jane Eakes and the Donelson–Hermitage Chamber of Commerce, have also relied on the 1987 amendment to Tenn.Code Ann. § 70–7–102, and claim that under that statute, they owed no duty of care to Brandy Rogers as a matter of law.[1]

On March 21, 1988, the trial court granted the plaintiffs' motion to strike the defendants' plea of § 70–7–102 as a statutory defense. The court determined that this provision did not become law until May 17, 1987, which was one day after Brandy Rogers was injured. The court concluded that Tennessee constitutional provisions preclude the retroactive application of this statute, which would operate to alter substantive rights. The defendants argue on appeal that since Brandy died on May 18, 1987, which was one day after § 70–7–102 became law, there is no retroactive application of this provision because the plaintiffs' substantive rights in their claim for wrongful death did not vest until the time of death.

█ We agree with the trial court that to allow the defendants to assert § 70–7–102 as a statutory defense would be an unconstitutional retroactive application of that legislation. The Tennessee wrongful death statute provides:

The *right of action which a person*, who dies from injuries received from another,

---

**1.** Tenn.Code Ann. § 70–7–102 provides:

The landowner, lessee, occupant, or any person in control of such land or premises shall owe no duty of care to keep such land or premises safe for entry or use by others for such recreational activities as hunting, fishing, trapping, camping, water sports, white water rafting, canoeing, hiking, sightseeing, animal riding, bird watching, dog training, boating, caving, fruit and vegetable picking for the participant's own use, nature and historical studies and research, rock climbing, skeet and trap shooting, skiing, off-road vehicle riding, and cutting or removing wood for the participant's own use, nor shall such landowner be required to give any warning of hazardous conditions, uses of, structures, or activities on such land or premises to any person entering on such land or premises for such purposes, except as provided in § 70–7–014.

*... would have had* against the wrong-doer, in case death had not ensued, *shall not abate* or be extinguished by his death *but shall pass* to his ... next of kin.

Tenn.Code Ann. § 20–5–106(a) (emphasis added).

■ This section does not create a new cause of action for the plaintiffs, but simply preserves Brandy Rogers' right of action which would otherwise be extinguished by her death. *Wilson v. Massengill,* 124 F.2d 666 (6th Cir.1942); *Sharp v. Cincinnati, N.O. & T.P. Ry.,* 133 Tenn. 1, 179 S.W. 375 (1915). The right of action for wrongful death is that which the deceased would have possessed had she lived, and any recovery is in the right of the deceased. *Hance v. Haun,* 216 Tenn. 176, 391 S.W.2d 621 (1965); *Memphis St. Ry. v. Cooper,* 203 Tenn. 425, 313 S.W.2d 444 (1958).

■ Brandy Rogers' right of action for the defendants' alleged tortious conduct arose at the time of her injuries, May 16, 1987. At common law, her cause of action for personal injuries would have terminated at her death. *Michigan Central R.R. Co. v. Vreeland,* 227 U.S. 59, 33 S.Ct. 192, 57 L.Ed. 417 (1913). But the wrongful death statute keeps that action alive and the case must be treated as if the injured party had brought it herself. *Hance v. Haun, supra.* This statute is primarily a survival statute and no right of action exists independently of that which the deceased would have had, had she survived. *Jones v. Black,* 539 S.W.2d 123 (Tenn.1976). If Brandy Rogers could have sued for her injuries, her right survives her death. *Oman v. Delius,* 162 Tenn. 192, 35 S.W.2d 570 (1931). The law in effect at the time of the injuries which later resulted in her death should be applied to establish the liability for those injuries.

■ We emphasize the foregoing principles applicable to an action for wrongful death because the theory upon which they are grounded is equally applicable to the second issue, the effect of the release signed by Mrs. Rogers. On January 24, 1990, the trial court granted the plaintiffs' motion for judgment on the pleadings and denied the defendants' motion for summary judgment, on the grounds that the release is void as a matter of law. Some of the defendants have raised the issue of the release as an affirmative defense, and others argue that the doctrine of promissory estoppel precludes the plaintiffs from asserting its invalidity since the defendants relied on it as a condition to letting Brandy participate in the race. We conclude that under either theory, Mrs. Rogers could not execute a valid release as to the rights of her daughter to sue for injuries suffered from the alleged negligent acts of the defendants.

The principal case addressing this issue is *Childress v. Madison County,* 777 S.W.2d 1 (Tenn.Ct.App.1989). In *Childress,* the mother executed a release of liability as a condition to allowing her mentally retarded son to train for the Special Olympics. The plaintiffs alleged that the child sustained injuries and incurred medical expenses due to negligent supervision by the defendants. The parties to that lawsuit were the child, by and through his parents, and the mother and father individually. The defendants asserted that even if they were guilty of negligence, the plaintiffs' action should be barred by the release of claims executed by the mother individually and on behalf of her son.

The court in *Childress* rejected the defendants' contentions, and held that the mother could not execute a valid release or exculpatory clause as to the rights of her son against the Special Olympics or anyone else. The court stated "[t]he law is clear that a guardian cannot on behalf of an infant or incompetent, exculpate or indemnify against liability those organizations which sponsor activities for children and the mentally disabled." *Id.* at 7–8. The court further held that the release form signed by the mother was only effective to release the defendants from liability to her for injuries sustained by her son, but the form was ineffective to release the defendants from liability to the boy's father who

did not sign it. *Id.* at 6. Thus, the court affirmed the dismissal of the mother's cause of action, but reversed the dismissal of the child's and father's cause of action.

In the present case, the defendants contend that *Childress* is not controlling because that case involved a personal injury action, while this case involves a wrongful death. The defendants concede that if Brandy Rogers had survived her injuries, her cause of action would not be barred by the release her mother signed. But the defendants argue that since Brandy died she no longer has any interest at stake, and the release affects only the rights of Mr. and Mrs. Rogers because they are the sole beneficiaries of this cause of action. We conclude that the defendants place too much emphasis on where any recovery will ultimately go, and overlook the theory of the wrongful death statute and the reasoning of *Childress*. As stated earlier, the right of action for wrongful death is that which this child would have possessed had she lived, and any recovery is in her right. *Middle Tenn. R.R. v. McMillan*, 134 Tenn. 490, 184 S.W. 20 (1915).

■ The unique situation created by the wrongful death statute can be shown by assuming that on the day following Brandy's injuries, and the day before her death, Mr. and Mrs. Rogers had been killed in a common accident. The right to bring the action for Brandy's wrongful death would have then passed to her personal representative or next of kin. *See* Tenn. Code Ann. § 20–5–106(a). Could the defendants argue that the release signed by Mrs. Rogers defeated the right of action under those circumstances? The hypothetical serves to emphasize the fact that the cause of action is not personal to any of the survivors mentioned in the statute but, instead, the statute merely nominates certain persons to maintain the action on behalf of the deceased. "[T]he right of action for wrongful death which a person would have had, had he survived, with all of its incidents, passes to his personal representative; any recovery had in the case passes to the beneficiaries named in the statute not in their own right 'but because it passes to them in the right of the deceased.'" *Herrell v. Haney*, 207 Tenn. 532, 341 S.W.2d 574 (1960).

The appellants argue that this case is analogous to a line of cases in Tennessee which hold that a parent's contributory negligence will bar an action for wrongful death of a child, *Bamberger v. Citizens' Street Ry. Co.*, 95 Tenn. 18, 31 S.W. 163 (1895), and that the contributory negligence of one parent will be imputed to the other. *Nichols v. Nashville Housing Authority*, 187 Tenn. 683, 216 S.W.2d 694 (1949). The underlying principle in this line of cases is that being the sole beneficiary in a wrongful death case should not profit by his own negligence. *See Bamberger v. Citizens' Street Ry. Co.*, 95 Tenn. 18, 31 S.W. 163 (1895); *Smith v. Henson*, 214 Tenn. 541, 381 S.W.2d 892 (1964).

We think the principle applied in those cases distinguishes them from this case. Signing a release, as Mrs. Rogers did, should not be equated to fault that is a proximate contributing factor in the death of the child. If Mr. and Mrs. Rogers ultimately recover anything in the wrongful death action they will not be profiting from their own negligence.

■ We are also persuaded that the doctrine of promissory estoppel will not serve to expand the legal effect of the release to cover the action Brandy would have had for the injuries that resulted in her death.

■ Estoppels in pais or equitable estoppel "is a term applied usually to a situation where, because of something which he has done or omitted to do, a party is denied the right to plead or prove an otherwise important fact." 28 Am.Jur.2d, *Estoppel and Waiver* § 27. Here, Mrs. Rogers is not attempting to deny that she executed the release. What she does contest is its legal effect. When the organizers of the race were in a position equal to or greater than Mrs. Rogers to determine the conse-

quences of a parent's execution of a release on behalf of a minor child, how can they claim that they were misled into a change of position by her words or acts. We find the estoppel argument to be unpersuasive.

The question that must still be answered is: What is the effect of the release signed by Mrs. Rogers? We hold that the release was effective to waive any claim Mrs. Rogers would have had in her own right—not as a result of the wrongful death statute—for the injuries to her daughter. When a tort is committed against a child, the parents have a derivative cause of action for the loss of services and medical expenses resulting from the injury. *Dudley v. Phillips*, 218 Tenn. 648, 405 S.W.2d 468 (1966). Had the child lived, Mrs. Rogers would have been precluded from recovering for this cause of action. *See Childress v. Madison County*, 777 S.W.2d 1 (Tenn.App.1989). Beyond that the release had no effect as to the liability of the defendants for damages suffered by Brandy Rogers and her father, Wayne Rogers.

The judgment of the court below striking Tenn.Code Ann. § 70–7–102 as a defense to the action is affirmed. The court's holding that the release signed by Mrs. Rogers was void under the facts of this case is affirmed. The cause is remanded to the Circuit Court of Davidson County for further proceedings. Tax the costs on appeal to the appellants.

TODD, P.J., and FRANKS, J., concur.