Spencer Wayne "Bud" Holman was employed by McMullan Trucking ("McMullan") as a truck driver. In the early morning hours of July 7, 1994, he; his nine-year-old son Spencer Blake Holman ("Blake Holman"); and a family friend, Larry Morrow, were in a truck owned by McMullan when that truck ran off the road near Mount Pleasant, Tennessee. These three were the only occupants; all three were killed in this single-vehicle accident. Cynthia Holman, the mother of Blake Holman and wife of Bud Holman, filed a wrongful death action, based on her son's death, against McMullan, alleging *Page 1311 
that her son's death was the result of negligent or wanton operation of the truck owned by McMullan. McMullan filed a motion for summary judgment, which was granted by the trial court. Cynthia Holman appeals from the summary judgment. We affirm.
To support a motion for summary judgment, the movant must make a prima facie showing that there is no genuine issue of material fact and that he is entitled to a judgment as a matter of law. Rule 56, Ala.R.Civ.P.; Thompson v. Real EstateFinancing, Inc., 589 So.2d 722 (Ala. 1991). The burden then shifts to the nonmovant to present substantial evidence creating such an issue of fact or to show that the movant is not entitled to a judgment as a matter of law. Thompson, supra.
The following facts are undisputed: On July 5, 1994, McMullan dispatched Bud Holman to pick up a load in Florence that was to be delivered in Pontiac, Illinois. On this trip, Bud Holman was accompanied by his son Blake and by Morrow. After Bud Holman delivered the load in Illinois, McMullan then dispatched him to his next job in Cullman. It was on the trip to Cullman that the fatal wreck occurred. There were no eyewitnesses, but it appears that at about 3:30 a.m. on July 7, the truck ran off the roadway, hit a guardrail and a telephone pole, struck the Big Bigby Creek Bridge, and overturned into the creek.
There is some debate as to whether Bud Holman or Larry Morrow was driving the truck at the time of the accident. There was evidence that Bud Holman had become ill and that Morrow, who had not been hired by McMullan and who was not qualified to operate such a vehicle, had been driving at a time several hours before the time of the accident. To show that Bud Holman was driving, Cynthia Holman offered the deposition testimony of Wayne Sellers, a state trooper who investigated the accident. Sellers concluded that Bud Holman had been driving, based on Holman's status as an employee of McMullan and based on Sellers's observation of entries in a log book maintained by Bud Holman. While the identity of the driver is uncertain, there, nevertheless, is no issue of material fact that would require submission to a jury. Thus, the summary judgment in favor of McMullan was proper regardless of whether Bud Holman or Morrow was driving at the time of the wreck.
Both sides agree that Alabama choice of law doctrine requires that the substantive rights of an injured party be determined according to the law of the state where the injury occurred.Etheredge v. Genie Industries, Inc., 632 So.2d 1324 (Ala. 1994). The law of the forum, Alabama, governs questions deemed "procedural" in nature. Id. Because the injuries that caused Blake Holman's death occurred in Tennessee, we must apply the law of Tennessee to the substantive issues in this case to determine whether the summary judgment was correct.
In its summary judgment order, the trial court addressed only the issue whether, under Tennessee law, Cynthia Holman's claim was barred if Bud Holman, her husband, was at fault for their son's death. That order stated, in relevant part: "[T]he plaintiff alleges in her complaint that the death of Blake Holman was caused solely by the negligent operation of the truck by his father, Bud Holman. Thus, the percentage of negligence attributable to the father is 100%." We agree with the appellant that this conclusion misstates the specific allegation of the complaint, which claimed that the "driver of the motor vehicle, negligently or wantonly operated the motor vehicle while in the line and scope of his employment [with McMullan] . . . or with the authorization and ratification ofthe defendant or its employees, by causing said motor vehicle to leave the roadway." (Emphasis added.) We think this language is broad enough to state a cause of action against McMullan under the doctrine of respondeat superior for the negligence of either Bud Holman (its employee), or Larry Morrow, if McMullan had authorized Morrow to drive its vehicle. The conflicting evidence regarding the identity of the driver was presented to the trial court, and McMullan even argued that the only admissible evidence pointed to the conclusion that Morrow had been driving. Thus, we will consider whether, under Tennessee law, McMullan was entitled *Page 1312 
to a judgment if Morrow was at fault for the accident.
Like Alabama law, Tennessee law may render an employer liable for the torts committed by his employees for acts done within the scope of employment, under the doctrine of respondeatsuperior. Tennessee Farmers Mut. Ins. Co. v. American Mut.Liability Ins. Co., 840 S.W.2d 933 (Tenn.App. 1992); Sain v.ARA Manufacturing Co., 660 S.W.2d 499 (Tenn.App. 1983). See also Chamlee v. Johnson-Rast Hays, 579 So.2d 580 (Ala. 1990). However, the negligence of a driver may be imputed to the owner of the vehicle only upon the finding of a master-servant or joint enterprise relationship. Stephens v. Jones, 710 S.W.2d 38
(Tenn.App. 1984). "In order to hold an employer liable, the plaintiff must prove (1) that the person who caused the injury was an employee, (2) that the employee was on the employer's business, and (3) that the employee was acting within the scope of his employment when the injury occurred." Tennessee FarmersMut., 840 S.W.2d at 937.
The first element of this analysis, an employee-employer relationship between Morrow and McMullan, is clearly not satisfied in this case. Cynthia Holman concedes that McMullan had never hired Morrow to drive any of its trucks. Indeed, there is no evidence to suggest any joint enterprise or even to suggest that before the accident McMullen had knowledge that Morrow might be operating one of its vehicles. The plaintiff, however, argues that McMullan nonetheless could be held liable under the doctrine of respondeat superior because Bud Holman, who was McMullan's servant, had at least implicitly authorized Morrow to drive. We disagree.
It is clear that even if Bud Holman had given Morrow his permission to operate the vehicle, Holman's assent would not have been effective to create liability upon the part of McMullan for the actions of Morrow.
 "Where there is neither express nor implied authority given a servant to employ another to perform or to assist him in the performance of his work, or a subsequent ratification by his employer of such employment, the relation of master and servant between the employer and one so employed by his servant does not exist and he is not liable for the negligent acts of the latter under the doctrine of respondeat superior."
Potter v. Golden Rule Grocery Co., 169 Tenn. 240,84 S.W.2d 364, 365-66 (1935) (citation omitted). Cynthia Holman offered no evidence to suggest that McMullan had authorized Bud Holman or any of its other employees to delegate driving responsibilities to third persons under any circumstances, nor did she offer evidence that McMullan later ratified any decision by Bud Holman to allow Morrow to drive. In fact, any such appointment was shown to be expressly against company policy. If Morrow was operating the truck at the time of the accident, he would have been doing so without McMullan's authorization, and McMullan could not be liable under the doctrine of respondeat superior. Thus, McMullan's summary judgment was proper if Larry Morrow had negligently caused the death of Blake Holman.
We now consider the question whether the summary judgment would be proper if Bud Holman's negligent operation of the truck caused the death of Blake Holman. Under Tennessee law, "if an injured person is barred by law from suing the servant he is likewise barred from maintaining a suit against the master when liability is predicated solely on the doctrine ofrespondeat superior." Stewart v. Craig, 208 Tenn. 212, 217,344 S.W.2d 761, 763 (1961). Cynthia Holman alleged that McMullan is liable only vicariously for the tort of the driver, not for any direct negligence. Therefore, if the injured party, Blake Holman, because of whose death this action was brought, would have been barred from suing the servant, Bud Holman, then his mother likewise would be barred from maintaining a wrongful death action against McMullan.
As under the common law of Alabama, wrongful death actions did not exist under the common law of Tennessee. Any cause of action an injured person had was abated by his death. Busby v.Massey, 686 S.W.2d 60 (Tenn. 1984); Rogers v. Donelson-HermitageChamber of Commerce, 807 S.W.2d 242 *Page 1313 
(Tenn.App. 1990). See also Tatum v. Schering Corp.,523 So.2d 1042 (Ala. 1988); Breed v. Atlanta, B. C.R.R., 241 Ala. 640,4 So.2d 315 (1941). However, Tennessee has enacted a survival statute that preserves the decedent's right of action and provides for the procedure for distribution of the proceeds of any recovery. Memphis Street Ry. v. Cooper, 203 Tenn. 425,313 S.W.2d 444 (1958); Anderson v. Anderson, 211 Tenn. 566,366 S.W.2d 755 (1963). The statute provides in pertinent part:
 "Injury resulting in death — Succession to cause of action — Beneficiary who is minor or legally incompetent. — (a) The right of action which a person, who dies from injuries received from another, or whose death is caused by the wrongful act, omission, or killing by another, would have had against the wrongdoer, in case death had not ensued, shall not abate or be extinguished by the person's death but shall pass to the person's . . . parent or next of kin if at the time of death decedent was in the custody of the natural parents or parent. . . ."
Tenn. Code Ann. § 20-5-106(a).
Cynthia Holman is the parent and sole beneficiary of Blake Holman's right of action under the Tennessee survival statute. She brought this action alleging that Blake Holman's death was caused by negligence or wantonness on the part of the driver of McMullan's vehicle. If Morrow was the driver, then McMullan cannot be held liable under the doctrine of respondeatsuperior. On the other hand, if Bud Holman was driving at the time of the accident, then Cynthia Holman is necessarily alleging that negligent or wanton conduct on the part of her husband — Blake Holman's father — was the sole cause of Blake Holman's death.
It has long been the law in Tennessee that a recovery for wrongful death will not be allowed when the negligence of the sole beneficiary of any wrongful death recovery proximately contributed to the death for which recovery is sought.Nichols v. Nashville Housing Authority, 187 Tenn. 683,216 S.W.2d 694 (1949); Smith v. Henson, 214 Tenn. 541,381 S.W.2d 892 (1964). Tennessee law is equally clear that the negligence of a mother or father resulting in the wrongful death of a minor child is imputed to the other parent so as to preclude recovery by or for the benefit of either parent. Nichols, supra; Shelton v. Williams, 204 Tenn. 417, 321 S.W.2d 807
(1959); Hawthorne v. Lankes, 58 Tenn. App. 397; 430 S.W.2d 803
(1968); Pickens v. Southern Ry., 177 F. Supp. 553
(E.D.Tenn. 1959); Keener v. Morgan, 647 F.2d 691 (6th Cir. 1981). Thus, Tennessee law would impute the negligence of Bud Holman to Cynthia Holman, Blake Holman's mother. Because, by operation of law, she would be considered to have proximately caused the death of Blake Holman, she could not recover.
Cynthia Holman contends that her claim was not barred, because, she argues, the Tennessee rule that imputes the negligence of one parent to the other so as to bar the other's recovery for the wrongful death of the child is no longer valid because Tennessee has now adopted a comparative fault analysis for determining tort liability. In McIntyre v. Balentine,833 S.W.2d 52 (Tenn. 1992), the Supreme Court of Tennessee replaced the common law defense of contributory negligence with a modified system of comparative fault. Under McIntyre, a plaintiff may recover so long as his negligence is not greater than that of the defendant, although the plaintiff's damages are reduced in proportion to the percentage of the total negligence attributable to the plaintiff. Id. at 57. In order to determine the effect of Tennessee's adoption of the comparative negligence doctrine upon this case, we once again must look to the law of Tennessee.
Since embracing a comparative fault approach, the courts of Tennessee have not specifically considered the doctrine of imputed spousal negligence barring recovery for the wrongful death of a minor child. However, they have held that the doctrine of imputed negligence, founded upon public policy considerations somewhat similar to those in the present case, remains completely intact. In Camper v. Minor, 915 S.W.2d 437
(Tenn. 1996), the Supreme Court of Tennessee held that the negligent operation of a motor vehicle by a family member could still be imputed to the head of the household under the "family *Page 1314 
purpose" doctrine. The defendant in that case had argued that because the comparative fault system was incompatible with the concept of joint and several liability among tortfeasors,Bervoets v. Harde Ralls Pontiac-Olds, Inc., 891 S.W.2d 905
(Tenn. 1994), imputed negligence under the family purpose doctrine was a variant of joint liability and thus was no longer viable. The court disagreed, noting that under the doctrine liability was vicarious, not joint and several, and noting that the doctrine was based upon justifications of public policy, such as a presumption of parental control over children and the principle that the head of a household should bear responsibility because it is he who allows family members to operate the family automobile. Camper, 915 S.W.2d at 447. It reasoned that the doctrine of imputed negligence under the family purpose doctrine was still completely valid because the underlying public policy presumptions were unaffected by the shift to comparative negligence. Id.
For similar reasons, Tennessee's comparative fault principles are in no way contradictory to that State's doctrine of imputed negligence of a parent that prevents recovery in an action for the wrongful death of the child. The underlying principle in the Nichols line of cases is that the sole beneficiary in a wrongful death action should not profit by his own negligence,Rogers, supra, 807 S.W.2d 242, 246, citing Bamberger v.Citizens' Street Ry., 95 Tenn. 18, 31 S.W. 163 (1895), Smith v.Henson, supra; and the justification for imputing the negligence of one spouse to the other so as to prevent either from recovering has been stated as follows: "[W]hile the family relation exists, each parent impliedly authorizes the other to act for him or her in the common care and control of their children, so that each becomes responsible for the acts of the other in that respect." Nichols, 216 S.W.2d at 697 (citation omitted). These principles upon which the rules of law in question rest remain unaltered by Tennessee's adoption of the doctrine of comparative fault. In McIntyre, the Tennessee Supreme Court acknowledged that it was merely "shifting the arbitrary contributory negligence bar to a new ground." 833 S.W.2d at 57, citing Li v. Yellow Cab Co., 13 Cal.3d 804,532 P.2d 1226, 119 Cal.Rptr. 858 (1975). Therefore, we conclude that under Tennessee law the doctrine of comparative negligence is to be integrated with these principles, and that its integration with them merely modifies the ability of a negligent beneficiary to recover for the wrongful death of his decedent.
As this Court reads McIntyre, under Tennessee's comparative negligence analysis the fault of the beneficiary who brings a derivative action based on the death of the deceased child would either reduce or bar recovery on the wrongful death claim. See also Tuggle v. Allright Parking Systems, Inc.,922 S.W.2d 105 (Tenn. 1996) (the fault of a physically injured spouse either reduces or bars recovery on the other spouse's derivative loss-of-consortium claim). This would merely allow a negligent beneficiary to recover for her decedent's wrongful death if the beneficiary's own negligence was not greater than that of the defendant, with the total damages reduced by the percentage of the beneficiary's negligence. However, while the comparative negligence bar may be less severe than that imposed by the contributory negligence defense, it affords Cynthia Holman no relief in this case. She alleged that the sole cause of the accident was negligent or wanton operation of the truck; therefore, the driver is the only alleged tortfeasor and that person necessarily would be 100% at fault. As noted above, we assume here that Bud Holman was driving at the time of the accident, so this share is ascribed to him and imputed to Cynthia Holman under Tennessee law. Because she, as the beneficiary, is considered to be 100% at fault, her claim is barred under McIntyre.
The trial court also held that Cynthia Holman was barred from suing Bud Holman, and McMullan under the doctrine ofrespondeat superior, on the basis that Tennessee's parental immunity doctrine prevents a minor child from maintaining a negligence action seeking damages against his parent. However, because we have already concluded that Cynthia Holman's claim is barred under the doctrine of imputed negligence, we need not consider that holding. *Page 1315 
In conclusion, we hold that the trial court properly entered the summary judgment for McMullan. While there is conflicting evidence regarding who was driving at the time of the accident, there was no jury question on that issue because McMullan was entitled to a judgment as a matter of law regardless of which person was driving. Morrow was not an employee of McMullen and his operation of the vehicle was not authorized or ratified by McMullan. If Bud Holman was driving, then it was solely his negligence that caused the accident, and under Tennessee law his negligence would bar Cynthia Holman's wrongful death claim.
AFFIRMED.
HOOPER, C.J., and MADDOX, KENNEDY, and COOK, JJ., concur.