IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
July 1, 2015 Session

## ESTATE OF WALTER BRADLEY by Next of Kin, IRENE KING, ET AL. v. HAMILTON COUNTY

**Appeal from the Circuit Court for Hamilton County**
**No. 13C397    Jeffrey Hollingsworth, Judge**

———————————————

**No. E2014-02215-COA-R3-CV-FILED-AUGUST 21, 2015**

———————————————

Following his conviction, Mr. Bradley was placed at the Hamilton County Jail in March 2012. Over the next seven months, Mr. Bradley spent several weeks in and out of Erlanger Medical Center and Moccasin Bend Mental Health Institute due to his poor health. In October 2012, he passed away from tuberculosis. His sister brought this action for wrongful death and negligence under Tennessee's Governmental Tort Liability Act against Hamilton County. She later amended the complaint in order to add a claim for severe emotional distress she personally suffered as a result of her brother's alleged mistreatment. Hamilton County filed a motion to dismiss and a motion for summary judgment. The trial court consolidated the two motions together and dismissed the complaint in its entirety. The sister appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed;**
**Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., C.J., and FRANK G. CLEMENT, JR., P.J., M.S., joined.

H. Whitney Durand, III, and John M. Wolfe, Jr., Chattanooga, Tennessee, for the appellant, Estate of Walter Bradley by next of kin, Irene King.

R. Dee Hobbs, Chattanooga, Tennessee, for the appellee, Hamilton County.

**OPINION**

**I.  BACKGROUND**

On March 14, 2012, Walter Bradley ("Brother") was entered into custody at Hamilton County Jail ("Jail"). According to the complaint, Brother informed Jail's medical staff that he was a long time sufferer of tuberculosis and needed to take oxygen and Isoniazid to monitor his condition. However, the medical summary generated during Brother's booking process reflects that at no time did Brother inform Jail authorities that he had tuberculosis. Despite claims that Jail refused the pleas of both Brother and relatives to treat the tuberculosis, Jail personnel deny that they were provided any information from anyone about Brother's past or potentially present tuberculosis.

Over the next week, Brother was transported to Erlanger Emergency Room ("Erlanger") for a chest and lung x-ray as part of a physical assessment. The x-ray came back negative. Brother was then transferred to Moccasin Bend Mental Health Institute ("Moccasin Bend") after displaying signs of erratic behavior. He was returned to Jail after a brief period of treatment at Moccasin Bend, at which time he was assigned a bunk in Jail's medical wing. Soon after his return, Jail's standard skin test - a purified protein derivative ("PPD") test - was administered in order to determine if Brother had any medical conditions that would require special care or treatment. The results were negative. The record before us does contain a discharge summary from Moccasin Bend dated March 16, 2012, that relates: "History of Active Tuberculosis-treated."

According to clinical records at Jail, Brother took medication two to three times per day, thereby placing him in direct contact with clinic staff multiple times each week. On July 24, 2012, Elizabeth Peeples ("NP")[1] ordered treatment for Brother's decubitis ulcers[2] and scheduled several follow-up appointments in order to monitor his condition. Records reflect that Brother appeared healthy and happy as late as August 14, 2012, when he told Jail nurses that he was breathing fine and no longer required his oxygen tank. However, when NP saw inmate one week later, Brother's condition had regressed, and he was transferred back to Erlanger. There, additional tests determined Brother indeed had active tuberculosis. He was placed on medicine, but did not recover. On October 15, 2012, Brother passed away.

Approximately five months after Brother's death, Irene King ("Sister") brought this action as the administrator of her sibling's estate. Initially, the complaint included both Hamilton County ("County") and Jim Hammond ("Sheriff") as co-defendants, but a voluntary nonsuit order dismissed Sheriff shortly thereafter. The complaint, which seeks relief under the Tennessee Governmental Tort Liability Act ("GTLA") section 29-20-101, et seq., alleges that

---

[1]Her signature on orders reveals that she is an "FNP-C," a Family Nurse Practitioner-Certified.

[2]An area of damaged skin and tissue that occurs when the circulation to vulnerable parts of a person's body is cut off. The affected tissue dies without adequate blood flow to the area. Also known as "pressure ulcer," "pressure sore," or "bed sore." MayoClinic.com.http://www.mayoclinic.org/diseases-conditions/bedsores/basics/definition/con-20030848 (Last visited August 5, 2015).

> "the sole, legal, and proximate cause of Walter Bradley's death was the negligent failure of Hamilton County jail personnel to provide basic, simple, inexpensive, effective, and life-saving medical care."

According to the complaint, Jail deliberately: ignored pleas from relatives calling for tuberculosis treatment and refused to treat patient until County Mayor Jim Coppinger intervened and ordered Brother's transfer back to Erlanger in mid-August.[3]

On October 28, 2013, Sister moved to amend her complaint. After her motion was granted, Sister raised an additional cause of action for her personal mental and physical suffering and extreme grief experienced as a result of the wrongful death of Brother.[4] After several more motions were filed and heard by the trial court over the next few months, a deadline for dispositive motions was set for June 27, 2014. On the day before the deadline, County filed a 12.02(6) motion to dismiss for failure to comply with Tennessee Code Annotated sections 29-26-121 and -122, the provisions that govern pre-suit notice and certificate of good faith requirements for a health care liability action under Tennessee Health Care Liability Act ("HCLA").[5] A separate motion for summary judgment was filed by County seeking dismissal of all other claims against it.

Shortly thereafter, the trial court heard oral argument on both of County's motions. According to the trial court, the motions were combined because several documents outside the pleadings were attached to the motion to dismiss. Subsequently, the court issued a written memorandum order dismissing all of Sister's claims. According to the August 19, 2014, order,

> "[i]t is undisputed that, while in jail, [Brother] was given medical care and was seen by medical professionals. The only question is whether those medical professionals should have known about his tuberculosis or should have provided different types of care. That is a health care liability question."

---

[3]In Sister's deposition, however, she stated that she "did not tell them [Brother] had tuberculosis . . . [she] did not know for all those years that [Brother] had tuberculosis." She related she "told them about the oxygen."

[4]Under Tennessee law, a wrongful death claim "does not create a new cause of action for the plaintiff[], but simply preserves [the decedent's] right of action which would otherwise be extinguished by [his] death." *Rogers v. Donelson-Hermitage Chamber of Commerce*, 807 S.W.2d 242, 245 (Tenn. Ct. App. 1990); *See also* Tenn. Code Ann. § 20-5-106(a) (codifying wrongful death claims under Tennessee law).

[5]Tennessee Code Annotated section 29-26-101 now defines most all cases occurring in a medical context as "health care liability actions." *See* Acts 2011, ch. 510, § 8. Effective April 23, 2012, the term "health care liability" replaced "medical malpractice" in the Code. *See* Acts 2012, ch. 798.

The trial court concluded that failure to comply with the pre-suit notice and certificate of good faith requirements under sections 29-26-121 and -122 required dismissal of Sister's action because the claim was for health care liability. The trial court also found that the basis of Sister's emotional distress claim lay in health care liability and dismissed it. The court observed that "[t]he fact that [Sister] is claiming emotional distress does not change the fact that the allegations of negligence sound in what previously was called medical malpractice." Thus, the court granted summary judgment on the emotional distress claim for failure to comply with the HCLA provisions. Sister filed a timely notice of appeal.

## II. ISSUES

The issues raised in this appeal are as follows:

1.      Whether the HCLA applies to the facts of this case.

2.      Whether County waived Sister's non-compliance with the HCLA because it did not assert the non-compliance in its answers.

3.      Whether County failed to assert in a timely manner Sister's non-compliance with the HCLA.

4.      Whether the trial court should have decided the case on the basis of County's motion to dismiss rather than its motion for summary judgment.

## III. STANDARD OF REVIEW

The Tennessee Supreme Court has previously held that the proper way to challenge a plaintiff's compliance with the health care liability notice requirements is through a motion to dismiss. *Myers v. AMISUB (SFH), Inc.,* 382 S.W.3d 300, 307 (Tenn. 2012). "A complaint is subject to dismissal under rule 12.02(6) for failure to state a claim if an affirmative defense clearly and unequivocally appears on the face of the complaint." *Wilson v. Harris*, 304 S.W.3d 824, 826 (Tenn. Ct. App. 2009) (citing *Anthony v. Tidwell*, 560 S.W.2d 908, 909 (Tenn. 1977)). "In considering a motion to dismiss, courts must construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences." *Stewart v. Schofield*, 368 S.W.3d 457, 462 (Tenn. 2012). "A motion to dismiss should be granted only if 'it appears that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief.'" *Cartwright v. DMC-Memphis, Inc.,* No. W2013-01614-COA-R3CV, 2014 WL 6908420 at *3 (Tenn. Ct. App. 2014) (citing *Cullum v. McCool*, 432 S.W.3d 829, 832 (Tenn. 2013)). When reviewing a lower court's decision

on a 12.02(6) motion to dismiss, the issues raised on such motion involve questions of law and will be reviewed de novo with no presumption of correctness. *Winchester v. Little*, 996 S.W.2d 818 (Tenn. Ct. App. 1998).

In this case, documents outside the pleadings were attached to the motion to dismiss, so the court considered the materials and converted the motion into one for summary judgment. Tennessee Code Annotated section 20-16-101 provides that in a summary judgment action, the moving party who does not bear the burden of proof at trial shall prevail on its motion for summary judgment if it:

> (1) Submits affirmative evidence that negates an essential element of the nonmoving party's claim; or

> (2) Demonstrates to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim.

Tenn. Code Ann. § 20-16-101.

A trial court's decision to grant a motion for summary judgment presents a question of law, which we review de novo with no presumption of correctness. *See City of Tullahoma v. Bedford Cnty.,* 938 S.W.2d 408, 417 (Tenn. 1997). We must review all of the evidence in the light most favorable to the nonmoving party and resolve all factual inferences in the nonmoving party's favor. *Martin v. Norfolk S. Ry. Co.,* 271 S.W.3d 76, 84 (Tenn. 2008). If the undisputed facts support only one conclusion, then the court's summary judgment will be upheld because the moving party was entitled to judgment as a matter of law. *See White v. Lawrence*, 975 S.W.2d 525, 529 (Tenn. 1998).

## IV. DISCUSSION

### A.

In this appeal, we are first tasked with determining whether this case should have been brought as a health care liability action, a specialized type of negligence suit. If the facts indicate that the suit should have been brought as a health care liability action, then the HCLA applies, including Tennessee Code Annotated section 29-26-121, which requires sixty-day notice to defendant health care providers prior to the filing of the complaint, and section 29-26-122, which requires a certificate of good faith be filed along with the complaint. These requirements do not apply to a claim for ordinary negligence,

what Sister argued the instant action is.[6]  *See Estate of French v. Stratford House*, 333 S.W.3d 546, 555 (Tenn. 2011).

"[T]he distinction between [health care liability] and negligence is subtle; there is no rigid analytical line separating the two causes of action."  *Estate of French*, 333 S.W.3d at 555 (citing *Draper v. Westerfield*, 181 S.W.3d 283, 290 (Tenn. 2005)).  A health care liability action is defined as

> any civil action, including claims against the state or a political subdivision thereof, alleging that a health care provider or providers have caused an injury related to the provision of, or failure to provide, health care services to a person, regardless of the theory on liability on which the action is based.

Tenn. Code Ann. § 29-26-101(a)(1).  In health care liability cases, courts look to whether "the acts or omissions complained of involve a matter of medical science or art requiring specialized skills not ordinarily possessed by lay persons."  *Peete v. Shelby Cnty. Health Care Corp.*, 938 S.W.2d 693, 696 (Tenn. Ct. App. 1996) (quoting *Grainger v. Methodist Hosp. Healthcare Sys.*, No. 02A01-9309-CV-00201, 1994 WL 496781 at *3 (Tenn. Ct. App. 1994)).  Conversely, the action sounds in ordinary negligence if "the conduct complained of can instead be assessed on the basis of common everyday experience of the trier of fact."  *Id.*

An ordinary negligence claim has been deemed appropriate when a plaintiff seeks recovery "for injuries resulting from negligent conduct *not* affecting a patient's medical treatment."  *Draper*, 181 S.W.3d at 291 (emphasis added).  In *Gunter v. Laboratory Corp. of America*, plaintiff brought a negligence action against the lab that performed his paternity test, alleging that they negligently performed the test and overstated his probability of paternity. *Gunter,* 121 S.W.3d 636, 638 (Tenn. 2003).  The lab moved to dismiss, claiming that the action was governed by the one year statute of limitations applicable to health care liability claims, not the three year statute of limitations that applied to claims of ordinary negligence.  In determining that the complaint was properly brought as a negligence action, the Tennessee Supreme Court determined that the "core issue" was the adequacy of the laboratory's blood testing procedures, which "[did] not implicate issues of medical competence or judgment."  *Id.,* 121 S.W.3d at 641.

Recently, we expounded on the difference between an ordinary negligence claim and a health care liability claim.  In *Smith v. Testerman*, No. E2014-00956-COA-R9-CV,

---

[6]The elements of an ordinary negligence claim include:  (1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the standard of care amounting to a breach of duty; (3) an injury or loss; (4) causation in fact; and (5) proximate or legal cause.  *Satterfield v. Breeding Insulation Co.*, 266 S.W.3d 347, 355 (Tenn. 2008).

2015 WL1118009 (Tenn. Ct. App. 2015), a plaintiff filed a negligence action against defendant doctor for allegedly failing to remove a sponge following hernia surgery. *Id.* at *1. The plaintiff alleged that the action constituted ordinary negligence "as evidenced by the fact that the alleged malpractice lies within the common knowledge of laypersons" and did not require expert testimony to establish negligence. *Id*. at *3. However, because the hernia surgery actually required leaving the sponge in the plaintiff for a period of time, expert testimony was necessary in order to establish the elements of the claim, thereby requiring the filing of a certificate of good faith pursuant to Tennessee Code Annotated section 29-26-122.

We differentiated between health care claims that require expert testimony and those that do not. When a claim sounds in health care liability, as defined by Tennessee Code Annotated section 29-26-101, the pre-suit notice requirements set out in Tennessee Code Annotated section 29-26-121 apply. While the requirements of Tennessee Code Annotated section 29-26-121 *always* apply to health care liability claims, section 29-26-122 applies *only* to health care liability claims requiring expert testimony. "[E]xpert testimony is not required [in a HCLA claim] if 'the negligence is obvious and readily understandable by an average layperson.'" *Id*. at *4 (quoting *Barkes v. River Park Hosp., Inc.*, 328 S.W.3d 829, 833 (Tenn. 2010)). However, we noted that "Tennessee Code Annotated section 29-26-101 even designates claims involving 'staffing, custodial or basic care, positioning, hydration and similar patient services' as health care liability claims." *Id*. at *5 (citing Tenn. Code Ann. § 29-26-101(b)).

In *Mathes v. Lane*, No. E2013-01457-COA-R3-CV, 2014 WL 346676 (Tenn. Ct. App. 2014), a prisoner brought a health care liability claim against his doctor and the warden. *Id.* at *1. According to the complaint, the prisoner suffered additional injury to his right ankle as a result of his doctor's failure to properly *diagnose* his injury, resulting in a delay of proper treatment. *Id* (emphasis added). The court concluded that "the gravamen of Mr. Mathes's claim is in the medical art or science, training, and expertise that Mr. Mathes expected Dr. Lane to exercise within the physician-patient relationship." *Id*. at *5. Despite plaintiff's status as a pro se litigant, the trial court dismissed his action for failure to follow the pre-suit notice requirements found in Tennessee Code Annotated sections 29-26-121 and -122.

In the instant complaint, Sister alleged that,

> [t]he sole, legal, and proximate cause of [Brother]'s death was the negligent failure of Hamilton County jail personnel to provide basic, simple, inexpensive, effective, and life-saving medical care . . . .

The gravamen of Sister's claims allege a cause of action based on the negligent provision of adequate, and appropriate medical care, making this a HCLA action.

A similar issue recently presented itself in *Payne v. Tipton County*, 448 S.W.3d 891 (Tenn. Ct. App. 2014), where a prisoner brought a negligence action against Tipton County for its failure to provide adequate medical care. *Id.,* 448 S.W.3d at 893. In that case, the prisoner did not receive a physical examination after his March 1, 2004, booking, despite prison policy requiring one. Although the prisoner repeatedly complained of headaches and blurred vision, he did not receive adequate and qualified care until he was flown to a hospital upon suffering seizures some eight days later. In reversing the trial court's dismissal, we determined that the plaintiff correctly brought a negligence action against Tipton County. The conduct of Tipton County did not sound in health care liability; rather, we determined it amounted to a breach of duty for failure to provide *access* to medical care.

Sister's brief is correct in its statement that a jail's duty to provide access to medical care is not a health care liability issue. However, the facts of the case before us are distinguishable from those in *Payne*. Here, the record unequivocally shows that Brother did receive significant access to medical care during his incarceration. In fact, the record reflects that Brother was seen by several qualified medical personnel during his intake process at Jail. He received a physical assessment at Jail's clinic, which included a chest and lung x-ray, as well as a PPD test. Additionally, Jail transferred him to Erlanger, then Moccasin Bend, for further medical treatment and diagnosis after he displayed erratic behavior during the intake process. Upon his return, Brother was placed on Jail's medical wing where his condition was monitored.

In the months following the intake process, Brother continued to receive medical attention. Jail's medical records show that he suffered from decubitis ulcers, for which he received medicine from the clinical staff twice daily. Brother also took advantage of the clinic's inmate request forms, which are used to indicate a need for medical attention. After filling out one of the forms, Brother was seen by NP on July 24, 2012, at which time she prescribed him nutrition supplements to combat his lack of appetite and recommended weekly follow-ups to monitor his condition. When Brother's condition regressed, he was transferred back to Erlanger for supportive care.

This court's decision does not alter the undisputed fact "that [p]rison officials have a duty to exercise ordinary and reasonable care for the protection of the persons in their custody." *Payne*, 448 S.W.3d at 899 (quoting *Cockrum v. State*, 843 S.W.2d 433, 436 (Tenn. Ct. App. 1992)). In fact, "[t]he state has the duty to make available to inmates a level of medical care which is reasonably designed to meet their routine and emergency healthcare needs." 60 Am. Jur. 2d *Penal and Correctional Institutions* § 99. Under the facts of this case, this duty was clearly satisfied by Jail in that Brother undisputedly received medical care from trained professionals. As the trial court correctly pointed out,

[t]he only question is whether those medical professionals should have known about his tuberculosis or should have provided different types of care. That is a health care liability question.

Sister asserts that this case was not brought pursuant to the HCLA because she and her counsel did not believe the Act applied. Unfortunately for Sister, uncertainty of the law is no excuse. Health care liability cases

typically involve a medical diagnosis, treatment, or other scientific matters [and] [t]he distinction between ordinary negligence and malpractice turns on whether the acts or omissions complained of involve a matter of medical science or art requiring specialized skills not ordinarily possessed by lay persons. . . .

*Dunlap v. Laurel Manor Health Care, Inc.*, 422 S.W.3d 577, 580 (Tenn. Ct. App. 2013). "It is, of course, the responsibility of the courts to ascertain the nature and substance of a claim." *Estate of French*, 333 S.W.3d at 557. "The designation given those claims by either the plaintiff or the defendant is not determinative." *Id.*

In an attempt to show ordinary negligence, Sister alleges that Jail's actions, or lack thereof, demonstrate a breach of duty that an ordinary person could clearly identify. We disagree. The processes involved in diagnosing and treating an individual with tuberculosis are not something that just *any* person could infer. In *Sullins v. University Hospitals of Cleveland,* an expert medical witness testified that even "nurses . . . could not be expected to make a diagnosis of tuberculosis." *Sullins,* No. 80444, 2003 WL 195076, at *3 (Ohio App. 8 Dist. Jan. 28, 2003).

County's Policies and Procedures for the Sheriff's Office address medical treatment protocols for detainees held at Jail. Under these policies, Jail makes it crystal clear that "[a]ll clinical decisions and actions regarding health care service provided to offenders at Hamilton County Jail are the sole responsibility of qualified health care professionals." Policy 90.09.01. Additionally, "[t]he ultimate decision regarding standard of care rests with the Medical Director." Policy 90.09.44. By providing that a health care liability claim under the HCLA includes a claim against the state or a political subdivision thereof reveals that the General Assembly intended the requirements and benefits of the Act to apply to claims such as this one brought under GTLA against County. *Wade v. Jackson-Madison Cnty. Gen. Hosp. Dist.*, No. W2014-01103-COA-R3-CV, 2015 WL 340265 at *10-12 (Tenn. Ct. App. 2015).

The trial court dismissed Sister's separate allegation of negligent infliction of emotional distress upon concluding that her action arose out of the health care liability

- 9 -

claim. The court based its ruling on the language of section 29-26-101(a)(1) that provides:

> health care liability action means "any civil action[] . . . alleging that a health care provider or providers have caused an injury related to the provision of, or failure to provide, health care services to a person, regardless of the theory of liability upon which the action is based.

Thus, the court dismissed Sister's complaint in its entirety on the basis that the HCLA encompassed all claims involving the provision of health care services or treatment by a health care provider.

Clearly, Sister's claim is (1) a civil action; (2) against a health care provider; and (3) the harm alleged arises from "the provision of, or failure to provide, health care services." To prevail on her claim of negligent infliction of emotional distress, she must prove the element that County is liable for Brother's injuries. Thus, her alleged injuries undoubtedly arose from "the provision of, or failure to provide, health care services." Tenn. Code Ann. § 29-26-101(a)(1). When the claim is based on the injurious conduct of individuals that is related to the provision of health care, the requirements of the HCLA apply.

In conclusion, we find nothing in the record or otherwise that would indicate the action before us is anything but a health care liability action. The undisputed facts indicate that Sister did not comply with either sections 29-26-121 or -122 before the action commenced. These provisions required her to submit pre-suit notice 60 days prior to filing suit and to attach a certificate of good faith and a copy of the pre-suit notice with relevant documentation to the actual complaint. Tenn. Code Ann. §§ 29-26-121. -122. She has not shown "good cause" or "excusable neglect" for her failure to follow the pleading requirements and we find none in the record. Because Sister did not address the prerequisites to the commencement of a health care liability action, we affirm the dismissal of her claims.

## B.

We next consider whether County asserted non-compliance with the prerequisites of HCLA in a timely manner. Sister and her counsel assert that the scheduling order prevented further pleadings after May 21, 2014. They argue that County waived this defense because it alleged the failure to comply with sections 29-26-121 and -122 in its motions to dismiss and for summary judgment, which were filed on June 26 and 27, 2014. According to Sister's brief, the effect of these motions resulted in "trial by ambush."

- 10 -

In *Pratcher v. Methodist Healthcare Memphis Hosps.* 407 S.W. 3d 727 (Tenn. 2013), the Tennessee Supreme Court noted that defendants are not authorized "to sit on [their] hands and not assert [affirmative] defense[s][,] . . . [as] [t]o hold otherwise would be to invite parties to lie in wait . . . ." *Id.* at 735. The *Pratcher* decision relates that "Rule 8.03 provides a list of affirmative defenses and dictates how and when they must be raised:

> In pleading to a preceding pleading, a party shall set forth affirmatively facts in short and plain terms relied upon to constitute accord and satisfaction, arbitration and award, express assumption of risk, comparative fault (including the identity or description of any other alleged tort feasors), discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, statute of repose, waiver, workers' compensation immunity, and any other matter constituting an affirmative defense.
>
> As a general rule, a party waives an affirmative defense if it does not include the defense in an answer or responsive pleading. *See* Tenn. R. Civ. P. 12.08; *Estate of Baker v. King*, 207 S.W. 3d 254, 265 (Tenn. Ct. App. 2006) (noting that "affirmative defenses that are not properly raised are waived."); *Thompson, Breeding, Dunn, Creswell & Sparks v. Bowlin*, 765 S.W. 2d 743, 744 (Tenn. Ct. App. 1987) (citing Tenn. R. Civ. P. 12.08) . . . .

"Defenses of the failure to state a claim . . . are not waived by filing an answer to the complaint." *Cockrill v. Everett*, 958 S.W.2d 133, 135 (Tenn. Ct. App. 1997) (citing to Tenn. R. Civ. P. 12.08). In fact, "[t]hey may be raised at any time, even at a trial on the merits, and the court has the authority to dismiss the complaint sua sponte. *Id.* (citing *Huckeby v. Spangler*, 521 S.W.2d 568, 571 (Tenn. 1975)). Such a motion "tests only the legal sufficiency of the complaint, not the strength of a plaintiff's proof." *Sellick v. Miller*, 301 S.W.3d 636, 638 (Tenn. Ct. App. 2009) (citations omitted). "The party moving for dismissal for failure to state a claim must state the particular grounds for the motion in the motion itself, and merely moving for dismissal based on the failure to state a claim and stating the grounds in an accompanying memorandum does not fulfill the requirement." *Ralph v. Pipkin*, 183 S.W.3d 362, 366-67 (Tenn. Ct. App. 2005).

In this case, the record reflects that County did in fact raise the affirmative defense of failure to state a claim on which relief could be granted in its answer. However, it alleged no particular grounds for this defense in the answer, and it thus did not satisfy the

requirement *at that time*. That being said, the motion to dismiss, filed June 26, 2014, *did* satisfy the 12.02(6) requirements. Sister and her counsel are incorrect in their belief that a 12.02(6) motion may be waived if not pleaded in the answer. While waivable defenses do exist, as noted above a 12.02(6) motion is not one of those defenses, and it may be raised even as late as trial. Tenn. R. Civ. P. 12.08. Not only did County raise this defense before trial, but also before the agreed upon dispositive motion deadline. We find no validity to Sister's claim that County waived its non-waivable defense of failure to state a claim upon which relief can be granted.

Sister also asserts that if County believed the HCLA applied, it should have complied with section 29-26-122 and named Erlanger as comparatively at fault. County filed an answer on June 11, 2013; an amended answer on July 15, 2013; and an answer to the first amended complaint on May 5, 2014. The affirmative defenses raised were "comparative fault on the part of the deceased and two health care institutions and immunity under the GTLA."

Pursuant to Tennessee Code Annotated section 29-26-122(b), a defendant who identifies comparative fault by a non-party is required to file a certificate of good faith regarding the non-party at fault within thirty days after the filing of the answer:

> (b) Within thirty (30) days after a defendant has alleged in an answer or amended answer that a non-party is at fault for the injuries or death of the plaintiff and expert testimony is required to prove fault as required by § 29–26–115, each defendant or defendant's counsel shall file a certificate of good faith stating that:
>
> (1) The defendant or defendant's counsel has consulted with one (1) or more experts, which may include the defendant filing the certificate of good faith, who have provided a signed written statement confirming that upon information and belief they:
>
> (A) Are competent under § 29–26–115 to express an opinion or opinions in the case; and
>
> (B) Believe, based on the information reviewed concerning the care and treatment of the plaintiff for the incident or incidents at issue, that there is a good faith basis to allege such fault against another consistent with the requirements of § 29–26–115; or

- 12 -

(2) The defendant or defendant's counsel has consulted with one (1) or more medical experts, which may include the defendant filing the certificate of good faith, who have provided a signed written statement confirming that upon information and belief they:

(A) Are competent under § 29–26–115 to express an opinion[ ] or opinions in the case; and

(B) Believe, based on the information reviewed concerning the care and treatment of the plaintiff for the incident or incidents at issue, that there are facts material to the resolution of the case that cannot be reasonably ascertained from the information reasonably available to the defendant or defendant's counsel; and that, despite the absence of this information, there is a good faith basis for alleging such fault against another, whether already a party to the action or not, consistent with the requirements of § 29–26–115.

Tenn. Code Ann. § 29–26–122(b).

Pursuant to Tennessee Code Annotated section 29–26–122(c), a plaintiff faced with a defendant who raises comparative fault allegations against a non-party may:

• Allow the defendant to timely file the requisite certificate of good faith and either (a) file suit against the non-party subject to –122(a), or (b) face the risk of fault being assigned to a non-party at trial;

• Seek to strike the allegations of comparative fault if the defendant fails to timely file the certificate of good faith; or

• Waive the defendant's requirement to file a certificate of good faith and either (a) file suit against the non-party subject to –122(a), or (b) face the risk of fault being assigned to a non-party at trial.

Tennessee Code Annotated section 29–26–122(c) specifically provides:

The failure of a plaintiff to file a certificate of good faith in compliance with this section shall, upon motion, make the action subject to dismissal with prejudice. The failure of a

defendant to file a certificate of good faith in compliance with this section alleging the fault of a non-party shall, upon motion, make such allegations subject to being stricken with prejudice unless the plaintiff consents to waive compliance with this section. If the allegations are stricken, no defendant, except for a defendant who complied with this section, can assert, and neither shall the judge nor jury consider, the fault, if any, of those identified by the allegations. The court may, upon motion, grant an extension within which to file a certificate of good faith if the court determines that a health care provider who has medical records relevant to the issues in the case has failed to timely produce medical records upon timely request, or for other good cause shown.

Tenn. Code Ann. § 29–26–122(c)(emphasis added).

In this action, County alleged in its answer the comparative fault of "two health care institutions," but it never specifically "identified" a non-party. It did not file a certificate of good faith. Sister likewise did not comply with -122(c) once County made the allegations in its answer and she learned that others might be at fault. Section 29-26-122(c) specifically warns that "[t]he failure of a plaintiff to file a certificate of good faith in compliance with this section shall, upon motion, make the action subject to dismissal with prejudice." Tenn. Code Ann. § 29-26-122(c). Dismissal of the claims against County was mandated. *See Portwood v. Montgomery Cnty, Tenn.,* No. 3:13–cv–0186, 2013 WL 6179188, at *5 (M.D. Tenn. Nov. 25, 2013) ("If either a plaintiff or a defendant fails to comply with Section -122, the plaintiff's complaint or the defendant's allegations of fault against a non-party are, upon motion, subject to mandatory dismissal with prejudice.").

Finally, Sister argues that the trial court erred in combining County's motion to dismiss and motion for summary judgment into a single memorandum order. The trial court's order combined the two motions "[b]ecause several documents outside the pleadings were attached to the motion to dismiss." In *Myers*, the Supreme Court held that the proper way to challenge compliance with the prerequisite notice statutes under HCLA is a 12.02 motion to dismiss. *Myers*, 382 S.W.3d at 307. However, if a party submits evidentiary materials outside the pleadings in support of or in opposition to a 12.02(6) motion, the trial court has the discretion to consider these materials. *Staats v. McKinnon*, 206 S.W.3d, 532, 543 (Tenn. Ct. App. 2006). When the trial court does consider these evidentiary materials, the motion to dismiss is converted into a motion for summary judgment. *Id*.

As the trial court correctly concluded, numerous motions, affidavits and transcripts were filed and subsequently considered by the court before issuing the memorandum

order. Due to the consideration of these documents, the court correctly converted the motion to dismiss into a motion for summary judgment. However, it is of note that this court would have affirmed the dismissal of the complaint through either a motion to dismiss or a motion for summary judgment. Because the same result is achieved either way, no further discussion on this issue is required.

## V. CONCLUSION

The judgment of the trial court is affirmed and the case remanded for such further proceedings as may be necessary. Costs of the appeal are assessed to the appellant, Estate of Walter Bradley by next of kin, Irene King.

_____
JOHN W. McCLARTY, JUDGE